# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# CLEVELAND DIVISION

| | |
|---|---|
| CITY OF MAPLE HEIGHTS, OHIO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC., and HULU, LLC,<br><br>Defendants. | Case No.:<br><br>Judge:<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff City of Maple Heights, Ohio ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as more fully defined below), brings this class action against Defendants Netflix, Inc. and Hulu, LLC (collectively "Defendants"). Plaintiff makes the following allegations upon personal knowledge as to its own acts, upon information and belief and its attorneys' investigation as to all other matters, and alleges as follows:

### INTRODUCTION

1. Defendants provide video service in Ohio municipalities. When doing so, they use wireline facilities (*i.e.*, broadband wireline facilities) located at least in part in public rights-of-way.

2. Accordingly, Defendants should be and are required by law to pay each of those municipalities a video service provider fee of up to 5% percent of their gross revenue, as derived from their providing video service in that municipality.

3. Defendants have failed to pay the required fee, necessitating this lawsuit, and entitling Plaintiff and the putative class to the relief requested herein.

## PARTIES

*Plaintiff*

4. City of Maple Heights, Ohio ("Maple Heights") is a lawfully existing Ohio municipal corporation located in Cuyahoga County, Ohio.

*Defendants*

5. Netflix, Inc. ("Netflix") is a Delaware corporation, headquartered in Los Gatos, California. Netflix's primary business is its video service, which offers online streaming of a library of films and television programs, as well as the distribution and production of original films and television series. Netflix does business in Maple Heights, Ohio and has done so at all times relevant to this action.

6. Hulu, LLC ("Hulu") is a Delaware limited liability company, headquartered in Santa Monica, California. Hulu's primary business is its video service, which offers online streaming of live video programming and a library of films and television programs, as well as the distribution and production of original films and television series. Hulu does business in Maple Heights, Ohio and has done so at all times relevant to this action.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Defendants are citizens of a state different from that of Plaintiff, the putative class size is greater than 100, and the aggregate amount in controversy for the proposed Class exceeds $5,000,000.00, exclusive of interest and costs.

8. Venue is proper in this District, and this Court has personal jurisdiction over Defendants, pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this District, and because Defendants "transact affairs" in this District; each Defendant continuously and systematically engaged in and continues to engage in business in this District.

## FACTUAL ALLEGATIONS

9. Defendants provide video service to their subscribers to view television shows, movies, documentaries, and other programming.[1] They compete with other video service providers,[2] offering video programming[3] that is comparable to that provided by cable companies and television-broadcast stations.

10. Customers view Netflix's and Hulu's video programming—such as television shows, movies, and documentaries—using an Internet-connected device. Internet-connected devices are electronic devices that have software enabling them to stream Defendants' video programming, including smart televisions, streaming media players like Roku or Apple TV,

---

[1] "Video service" means the provision of video programming over wires or cables located at least in part in public rights-of-way, regardless of the technology used to deliver that programming, including Internet protocol technology or any other technology. The term includes cable service, but excludes video programming provided to persons in their capacity as subscribers to commercial mobile service, as defined in the "Telecommunications Act of 1996," Pub. L. No. 104-104, Title VII, Sections 704(a) and 705, 110 Stat. 61, 151, 153, 47 U.S.C. 332; video programming provided solely as part of and through a service that enables users to access content, information, electronic mail, or other services offered over the public Internet. *See* O.R.C. § 1332.21(J).

[2] "Video service provider" means a person granted a video service authorization under sections 1332.21 to 1332.34 of the Revised Code. *See* O.R.C. § 1332.21(M).

[3] "Video programming" has the same meaning as in the "Cable Communications Policy Act of 1984," Pub. L. No. 98-549, 98 Stat. 2781, 47 U.S.C. 522 ["the term "video programming" means programming provided by, or generally considered comparable to programming provided by, a television broadcast station."]. *See* O.R.C. § 1332.21(I).

smartphones, tablets, video game consoles, set-top boxes from cable and satellite providers, Blu-ray players, and personal computers.

11. When a subscriber wants to watch Netflix or Hulu video programming, he or she uses an Internet-connected device to send a request to the Internet-service provider. The Internet-service provider then forwards that request to Netflix's and Hulu's dedicated Internet servers, which, in turn, provide a response. This response is then relayed back to the subscriber's device, and Netflix and Hulu deliver the video programming via Internet protocol technology (*i.e.*, broadband wireline facilities located at least in part in public rights-of-way).

12. During the relevant time period, Netflix has used a content delivery network called Netflix Open Connect to deliver 100% of its video traffic to its subscribers. When a Netflix subscriber wants to view Netflix programming, the subscriber's Internet service provider will connect the subscriber to the closest Netflix Open Connect server offering the fastest speeds and best video quality.

13. According to Netflix, that means that most of its subscribers receive Netflix's video programming from servers either inside of, or directly connected to, the subscriber's Internet service provider's network within their local region. Netflix has "end-to-end" control of its entire Open Connect system, including any servers located in Maple Heights and other Ohio municipalities.

14. Similar to Netflix, when a Hulu subscriber wants to view Hulu's video programming, the subscriber's Internet service provider will connect the subscriber to the Hulu server. Hulu receives the directive and checks the subscriber's entitlement, the location, and the content availability. It then delivers the program through the Internet to the subscriber's Internet-connected device.

15. Defendants' subscribers typically use a broadband Internet connection, such as DSL or fiber optic cable to receive Defendants' programming. In Maple Heights, common providers include AT&T and Spectrum Broadband. These broadband Internet connections rely upon wireline facilities located in whole or in part in the public right(s)-of-way to deliver Internet service to subscribers. That means that Defendants operate and provide their video service to Defendants' subscribers through wireline facilities located at least in part in the public right-of-way.

16. As video service providers, Defendants were required to apply for and obtain prior authorization from the director of commerce of Ohio and provide ten days' advance, written notice to Plaintiff and other Ohio municipalities before it started providing its video service in those jurisdictions. *See* O.R.C. § 1332.23(A), O.R.C. § 1332.24(A)(1), and O.R.C. § 1332.27(A).

17. Defendants failed to apply for, and therefore never received, authorization from the Ohio director of commerce, and Defendants failed to provide ten days' advance, written notice to Plaintiff and other Ohio municipalities, and, therefore, have been and continue to provide video service throughout Ohio without legal authorization, and in contravention of the Ohio Revised Code.

18. Had Defendants provided the statutorily required ten days' advance, written notice, then Plaintiff and other Ohio municipalities would have been provided an opportunity, as set forth in the Ohio Revised Code, to notify Defendants of the percentage of gross revenues required to be paid for providing video service in those jurisdictions (i.e. the video service provider fee). *See* O.R.C. 1332.32(C)(1).[4]

---

[4] *See also* Ohio Department of Commerce, FAQs for Local Governments, *available at* https://www.com.state.oh.us/documents/vsa_LocalGovernmentFAQs.pdf

5

19. Many Ohio municipalities, including Maple Heights, have enacted local ordinances that impose a video service provider fee of 5% on all video service providers.

20. The Ohio director of commerce would have authorized video service providers such as Defendants to use public rights-of-way, as long as said video service provider makes a quarterly video service provider payment to each city in which it provides video service. The required video service provider payment is up to 5% of gross revenues,[5] received by the video service provider from the provision of video services in that city. *See* O.R.C. § 1332.32.

21. Defendants were required to receive authorization from the Ohio director of commerce and provide ten days' advance, written notice before providing video service in Maple Heights and the other Ohio municipalities in which they provide their video services. Defendants' failure to receive authorization and provide advance, written notice, however, did not relieve Defendants of the obligation to pay a video service provider fee of up to 5% of their gross revenues derived from providing such video service in those municipalities. *See* O.R.C. § 1332.32.

22. Defendants have failed to comply with § 1332.32 because they have failed to receive authorization and provide ten days' advance, written notice, directly resulting in the failure to pay Plaintiff and the other Class members the required video service provider fee of up to 5% of gross revenues.

23. Plaintiff, individually and on behalf of other Ohio municipalities, seeks to require Defendants to abide by the Ohio Revised Code, and pay what they owe to these municipalities.

## CLASS ACTION ALLEGATIONS

---

[5] "Gross revenue" shall be computed in accordance with generally accepted accounting principles. *See* O.R.C. § 1332.32(B).

6

24. Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class defined as:

> **All Ohio municipalities in which one or more of the Defendants has provided video service (the "Class").**

25. Excluded from the Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

26. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

27. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The proposed Class is sufficiently numerous that individual joinder of all Class members is impracticable. Indeed, the Class size is believed to be hundreds of municipalities. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

28. **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

   a. Whether Defendants provide video service, as defined by O.R.C. § 1332.21(J), within Plaintiff's and the other Class members' geographic areas;

   b. Whether Defendants are video service providers, as defined by O.R.C. § 1332.21(M)

   c. Whether Defendants were required to receive authorization from the Ohio director of commerce and provide ten days' advance, written notice to Plaintiff and other Ohio municipalities of such service;

   d. Whether Defendants' failure to apply and obtain authorization and failure to provide ten days' advance, written notice to Plaintiff and other Ohio

7

    municipalities of such video service has relieved Defendants of their obligation to pay video service provider fees pursuant to O.R.C. § 1332.32;

  e. The appropriate measure of damages to award Plaintiff and the other Class members; and

  f. The appropriate declaratory relief to which Plaintiff and the other Class members are entitled.

  29. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and each of the other Class members is entitled to video service provider fee payments from Defendants pursuant to O.R.C. § 1332.32, and Defendants have failed to pay Plaintiff and each of the other Class members those video service provider fees. Plaintiff is asserting the same claims and legal theories individually and on behalf of the other Class members.

  30. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class members who it seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where defendants breached statutory obligations, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and its counsel.

  31. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and/or declaratory relief, as described below, with respect to the Class members.

  32. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy,

and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

## COUNT I

### VIOLATION OF OHIO REVISED CODE § 1332.32

33. Plaintiff repeats, realleges, and incorporates by reference Paragraphs 1-32, as if fully set forth herein.

34. Defendants provide video service, and are video service providers, in Maple Heights and each municipality comprising the Class. *See* O.R.C. § 1332.21(M). Defendants derive gross revenues from providing these video services.

35. Defendants are thus required, by statute, to pay each municipality in which they provide video service, a video service provider fee of up to 5% of their gross revenues derived from their operations in that municipality. *See* O.R.C. § 1332.32. Failure to receive the required authorization from the Ohio director of commerce does not excuse Defendants' obligation to make these payments.

36. Defendants have failed to comply with § 1332.32 because they have failed to pay Plaintiff and the other Class members up to 5% of gross revenues, as required.

37. Plaintiff and the other Class members are, therefore, entitled to damages as a result of Defendants' violations of O.R.C § 1332.32, along with pre- and post-judgment interest, in an amount to be determined at trial.

## COUNT II

## DECLARATORY JUDGMENT ACT

38. Plaintiff repeats, realleges, and incorporates by reference Paragraphs 1-32, as if fully set forth herein.

39. This case involves an actual controversy of sufficient immediacy, which is substantial and concrete, touches upon the legal relations of parties with adverse interests, and is subject to specific relief through a decree of conclusive character.

40. Pursuant to 28 U.S.C. §§ 2201-2202, Plaintiff seeks a declaration, and resulting order, from the Court that:

   a. Each Defendant provides "video service," as that term is defined in the Ohio Revised Code. *See* O.R.C. § 1332.32(J);

   b. Each Defendant is a "video service provider," as that term is defined in the Ohio Revised Code. *See* O.R.C. § 1332.32(M);

   c. Defendants provide video service, and are video service providers, in Maple Heights and each municipality in the Class. *See* O.R.C. § 1332.32(J)-(M);

   d. Defendants were required to receive authorization from the Ohio director of commerce and provide ten days' advance, written notice to Plaintiff and other Ohio municipalities of such service. *See* O.R.C. § 1332.23(A), O.R.C. § 1332.24(A)(1), and O.R.C. § 1332.27(A)

   e. Defendants are required to pay Plaintiff and each of the other Class members a video service provider fee of up to 5% of their gross revenues derived from their operations in each such municipality, pursuant to O.R.C. § 1332.32; and

   f. Defendants have failed to comply with O.R.C. § 1332.32, because they have each failed to pay to Plaintiff and each of the other Class members the required fee of up to 5% of gross revenues.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

a. Enter an Order certifying the above-defined Class and designating Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

b. Award all monetary relief to which Plaintiff and the other Class members are entitled, including as set forth in Count I above;

c. Grant declaratory relief as set forth in Count II above, including ordering Defendants to cure their noncompliance with O.R.C. § 1332.32;

d. Award pre- and post-judgment interest;

e. Award reasonable attorneys' fees and costs to Plaintiff's counsel; and

f. Grant such further and other relief as this Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: August 21 2020

Respectfully submitted,

*/s/ Justin J. Hawal*
Mark A. DiCello (0063924)
Justin J. Hawal (0092294)
**DICELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio 44060
Tel: 440-953-8888
madicello@dicellolevitt.com
jhawal@dicellolevitt.com

Adam J. Levitt
Mark Hamill*
Brittany Hartwig*
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel: 312-314-7900
alevitt@dicellolevitt.com
mhamill@dicellolevitt.com
bhartwig@dicellolevitt.com

Austin Tighe*

Michael Angelovich*
**NIX PATTERSON, LLP**
3600 North Capital of Texas Highway
Building B, Suite 350
Austin, Texas 78746
Tel: 512-328-5333
atighe@nixlaw.com
mangelovich@nixlaw.com

Peter Schneider*
**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**
3700 Buffalo Speedway, Ste. 1100
Houston, Texas 77098
Tel: 713-338-2560
pschneider@schneiderwallace.com

Todd M. Schneider*
Jason H. Kim*
**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: 415-421-7100
tschneider@schneiderwallace.com
jkim@schneiderwallace.com

*Counsel for Plaintiff and the Proposed Class*

\* *Pro Hac Vice* applications to be filed