**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CITY OF MAPLE HEIGHTS, OHIO,** *et al.*, | ) ) ) | |
| | ) | **CASE NO.: 1:20-CV-01872** |
| **Plaintiffs,** | ) ) | |
| | ) | **JUDGE JAMES S. GWIN** |
| **v.** | ) ) | |
| | ) | **MAGISTRATE JUDGE** |
| **NETFLIX, INC., et al.,** | ) | **THOMAS M. PARKER** |
| | ) | |
| **Defendants.** | ) | |

**<u>DEFENDANT NETFLIX, INC.'S MEMORANDUM OF LAW</u>**
**<u>IN SUPPORT OF ITS MOTION TO DISMISS</u>**

i

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF THE ARGUMENT ...................................................................1

II.  Background ...........................................................................................................2

    A.  The Netflix Streaming Service ...............................................................2

    B.  Delivery of Content .................................................................................3

    C.  The Ohio Law ..........................................................................................4

III.  STATEMENT OF ISSUES ..................................................................................5

IV.  RULE 12(B)(6) STANDARD ..............................................................................6

V.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED ...............................7

    A.  The Ohio Law Does Not Apply to Netflix ...............................................7

        1.  Netflix Does Not Provide Video Programming Comparable to Programming Provided by a Television Broadcast Station. ..................7

        2.  Even If Netflix Provided Video Programming Its Services Would Be Exempt Because They Are Offered Over the Public Internet .................................................................................................8

        3.  Netflix Does Not Own or Operate a Video Service Network in the Public Right-of-Way .........................................................................8

    B.  Federal Law Preempts State and Local Attempts to Impose Franchise Fees on Netflix ........................................................................9

        1.  The Text and Structure of the Communications Act Make Clear That Franchise Fees May be Imposed *Only* for "Cable Services." ................................................................................................10

        2.  Binding Federal Communication Commission Precedent Further Confirms that Franchise Fees Based on the Provision of Non-Cable Services Are Preempted .......................................................11

    C.  The Internet Tax Freedom Act Prohibits Discriminatory Treatment of E-Commerce ....................................................................13

    D.  The Ohio Law Violates the First Amendment ....................................15

ii

    **1.**    **As Applied, the Ohio Law Unconstitutionally Discriminates Between Mobile and Wireline Video Providers. ...................................16**

    **2.**    **As Applied, the Ohio Law is Unconstitutionally Vague. ......................17**

    **3.**    **Plaintiff Unconstitutionally Attempts to Enforce the Ohio Law Against Just *Two* Speakers in This Action. ............................................18**

  **E.**    **In the Alternative, this Court Should Refer the Case to the Ohio Director of Commerce Under the Primary Jurisdiction Doctrine ..................19**

**VI.**    **CONCLUSION ...................................................................................................20**

# TABLE OF AUTHORITIES

## CASES

*Arkansas Writers' Project v. Ragland*, 481 U.S. 221 (1987) ................................. 15, 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 6

*AT&T Communications of the Southwest, Inc. v. City of Austin, Texas,* 40 F. Supp. 2d 852 (W.D. Tex. 1998), *vacated as moot*, 235 F.3d 241 (5th Cir. 2000) ....................................................... 9

*Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010) ........................................ 19, 20

*Chattanooga Gas Co. v. City of Chattanooga*, No. 1:04-cv-00214, 2007 WL 1387505 (E.D. Tenn. May 7, 2007) ......................................................................... 14

*Citizens United v. FEC*, 558 U.S. 310 (2010)............................................................. 16

*City of Eugene v. Comcast of Oregon II*, 375 P.3d 446 (Or. 2016)............................................ 12

*City of New York v. FCC*, 486 U.S. 57 (1988)............................................................... 11

*City of Portland v. United States*, 969 F.3d 1020 (9th Cir. 2020) .................................................. 12

*Comcast of Maine/New Hampshire, Inc. v. Mills*, 435 F. Supp. 3d 228 (D. Me. 2019).............. 17

*Cox Communications Hampton Roads., LLC v. King,* No. (Civil) CL19-3711, 2020 Va. Cir. LEXIS 123 (Va. Cir. Ct. Aug. 14, 2020)........................................................................... 14

*Emahiser v. Complete Coverage Insurance, LLP*, 53 F. Supp. 3d 1025 (N.D. Ohio 2014).......... 6

*Erie County, Ohio v. Morton Salt, Inc.*, 702 F.3d 860 (6th Cir. 2012).......................................... 6

*Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141 (1982) ........... 11, 12

*Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991)................................................... 18

*Kentucky v. Netflix, Inc.*, No. 15-CI-01117 (Ky. Cir. Ct. Aug. 23, 2016) ........................ 2, 4, 7, 9

*Lazarus v. Ohio Casualty Group*, 761 N.E.2d 649 (Ohio App. Ct. 2001)................................. 19

*NAACP v. Button*, 371 U.S. 415 (1963)................................................................... 18

*National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998)......................................... 16, 18

*National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018).............. 15, 18

*Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983) ... 16, 18

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ....................................................... 17, 19

*Sanders v. McDowell*, 44 F. Supp. 3d 731 (N.D. Ohio 2014) .......................................... 6

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) .................................................. 16, 18

*Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622 (1994) ..................... 16, 17, 19

*Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130 (4th Cir. 2000) ............................. 14

## STATUTES

28 U.S.C. § 1341 ..................................................................................................... 14

47 U.S.C. § 1302 ..................................................................................................... 12

47 U.S.C. § 151 (note), § 1101(a)(2) ....................................................................... 13

47 U.S.C. § 151 (note), § 1105(2)(A) ....................................................................... 15

47 U.S.C. § 151 (note), § 1105(3) ............................................................................ 13

47 U.S.C. § 151 (note), § 1105(8) ............................................................................ 13

47 U.S.C. § 151 (note), § 1105(8)(B) ....................................................................... 13

47 U.S.C. § 151 *et seq.* ............................................................................................. 9

47 U.S.C. § 521 ....................................................................................................... 10

47 U.S.C. § 522(20) ............................................................................................... 5, 7

47 U.S.C. § 541 ......................................................................................................... 9

47 U.S.C. § 541(a)(2) .............................................................................................. 10

47 U.S.C. § 542 ............................................................................................... 9, 13, 15

47 U.S.C. § 542(b) .................................................................................................. 10

47 U.S.C. § 542(g) .................................................................................................. 10

47 U.S.C. § 556(c) ............................................................................................... 9, 11

Ohio Rev. Code § 1332.21 *et. seq.* ......................................................................... 1, 5

Ohio Rev. Code § 1332.21(I) ............................................................................ 5, 7, 10

Ohio Rev. Code § 1332.21(J) ....................................................................... 5, 8, 15, 16

Ohio Rev. Code § 1332.21(L)................................................................................................ 8

Ohio Rev. Code § 1332.21(M) ............................................................................................. 5

Ohio Rev. Code § 1332.22(C) ............................................................................................ 12

Ohio Rev. Code § 1332.22(H) ........................................................................................... 20

Ohio Rev. Code § 1332.23................................................................................................. 16

Ohio Rev. Code § 1332.23(A) ............................................................................................. 5

Ohio Rev. Code § 1332.24................................................................................................. 19

Ohio Rev. Code § 1332.24(A)(1) ..................................................................................... 5, 8

Ohio Rev. Code § 1332.24(A)(2) ............................................................................... 5, 10, 11

Ohio Rev. Code § 1332.24(A)-(C) ..................................................................................... 19

Ohio Rev. Code § 1332.32............................................................................................. 5, 14

Ohio Rev. Code § 1332.34................................................................................................. 10

Pub. L. No. 104-104, § 303(b), 110 Stat 56 ..................................................................... 10

## REGULATIONS

47 C.F.R. § 73.3999(b) ....................................................................................................... 7

47 C.F.R. § 73.670(a)........................................................................................................... 7

## ADMINISTRATIVE DECISIONS

Declaratory Ruling, Report and Order, and Order, *In the Matter of Restoring Internet Freedom*,
    33 FCC Rcd. 311 (2018), *vacated in part on other grounds*, *Mozilla Corp. v. FCC*, 940 F.3d 1
    (D.C. Cir. 2019) ................................................................................................... 4, 9

Eighteenth Report, *In The Matter Of Annual Assessment Of The Status Of Competition In The
    Market For The Delivery Of Video Programming*, 32 FCC Rcd. 568 (2017) ............. 3, 4, 8, 18

*In re Commc'ns Marketplace Report*, FCC 18-181 ¶¶ 6, 173 n.523, 174, 201, 2018 WL 6839365
    (Dec. 26, 2018) ................................................................................................... 3

Report and Order, *In the Matter of Implementation of Section 621(a)(1) of the Cable
    Communications Policy Act of 1984 As Amended by the Cable Television Consumer
    Protection. & Competition Act of 1992*, 22 FCC Rcd. 5101 (2007), *petitions for review denied
    in pertinent part*, *Alliance for Cmty. Media v. FCC*, 529 F.3d 763 (6th Cir. 2008)........ 5, 11, 15

Report and Order, *In the Matter of Preserving the Open Internet*, 25 FCC Rcd. 17905 (2010), *vacated in part on other grounds*, *Verizon v. FCC*, 740 F.3d 623 (D.C. Cir. 2014)................ 16

Third Report and Order, *In the Matter of Implementation of Section 621(a)(1) of the Cable Communications Policy Act of 1984 As Amended by the Cable Television Consumer Protection & Competition Act of 1992*, 34 FCC Rcd. 6844 (2019) .................................... 11, 12

## I.     SUMMARY OF THE ARGUMENT

Although this case is ostensibly about a franchise fee to compensate Ohio cities for the use of public rights-of-way, in reality it is an attempt to tax digital video content provided over the Internet in violation of state and federal law.  Plaintiff City of Maple Heights's ("Plaintiff") attempt to drastically and impermissibly expand the scope of Ohio law, which permits taxation of cable operators that place wires and cables under streets and on poles in public rights-of-way, to also include video ***content*** providers that do not, would have radical implications.  Under Plaintiff's approach, every provider of Internet video content throughout the world would be required to apply for a video service authorization ("VSA") before it could supply video content to Ohio consumers, and would be subject to franchise fee taxation.  *See* Ohio Rev. Code § 1332.21 *et. seq.*, (the "Ohio Law").  This sweeping expansion would apply not only to subscription providers, such as Direct TV Now, CBS All Access, HBO Max, and ESPN, and transaction-based video providers, such as Amazon Prime Video and iTunes, but also to free video content providers, such as YouTube and TikTok.  The language and structure of the Ohio Law make clear that Ohio did not intend that result, and even if it did, imposition of such a tax would violate federal law.

Plaintiff's request for a declaration from this Court that Defendant, Netflix, Inc. ("Netflix"):  (1) provides a "video service" and is a "video service provider" under the Ohio Law; (2) was required to receive a VSA from the Ohio Director of Commerce; and (3) was required to, and failed to, pay Plaintiff a franchise fee is legally deficient, and must be dismissed, for several independent reasons, which are apparent from the face of the Complaint:

- ***First***, the Ohio Law does not apply to Netflix because it does not engage in activities requiring a VSA, and even if Netflix did engage in such activities, it falls within the Ohio Law's specific exemption for services offered over the public Internet.

1

- ***Second,*** the imposition of state or local franchise fees on Netflix is inconsistent with, and preempted by, the federal Communications Act of 1934, as amended, and long-standing Federal Communications Commission ("FCC") precedent.

- ***Third***, application of the Ohio Law to Netflix would violate the Internet Tax Freedom Act and the First Amendment to the United States Constitution.

- ***Finally***, under the primary jurisdiction doctrine, this Court should refrain from deciding this case, and instead refer the case to the Ohio Director of Commerce to determine whether Netflix is required to obtain a VSA and whether it must pay franchise fees.

This case is expected to be assigned to either the Standard or Complex Track under L.R. 16.1-16.3 and this Memorandum complies with the page limitations for dispositive motions under either Track as set forth in L.R. 7.1(f).

## II.    BACKGROUND

### A.    The Netflix Streaming Service

Netflix, which is headquartered in California, is a producer and distributor of on-demand video content.  *See* Compl. (Dkt. No. 1) ¶ 5.  Netflix offers its subscribers online streaming access to a library of documentaries, feature films, and television series across a variety of genres and languages to viewers via the public Internet.  Compl. ¶¶ 5, 10.  Netflix does not provide live programming, such as sports, news, and award shows, nor does it provide "linear programming" by offering content on any set schedule.  *See Kentucky v. Netflix, Inc.*, No. 15-CI-01117 (Ky. Cir. Ct. Aug. 23, 2016) at 14, attached as Exhibit 1.[1]  Rather, Netflix subscribers can watch as much as they want, anytime, anywhere, on any Internet-connected screen, all without commercials.

---

[1] No court in Ohio has addressed whether the Ohio Law applies to Netflix.  The Kentucky Circuit Court (the only court that has addressed this issue in the context of a similar statute) held that Netflix was not subject to that state's Utility Gross Receipts license tax.

### B.     Delivery of Content

To access Netflix's library, subscribers must have both a personal device such as a computer or smart television, and their own Internet connection.  Compl. ¶ 10.  When Netflix subscribers want to view Netflix programming, they connect to their separate Internet Service Provider ("ISP"), which, in turn, connects to a Netflix server.  Compl. ¶ 11.  Netflix's subscribers must use a broadband Internet connection to receive Netflix's programming on, for example, a computer or smart television.  Compl. ¶ 15.  These wireline broadband Internet connections rely on facilities located in the public right-of-way to deliver Internet service to subscribers.  Compl. ¶ 15.  Netflix content is also available to subscribers using mobile devices, in which case they also must supply their own Internet connection (i.e., from their cellular provider).  *See* Eighteenth Report, *In The Matter Of Annual Assessment Of The Status Of Competition In The Market For The Delivery Of Video Programming*, 32 FCC Rcd. 568 ¶ 128 (2017) ("Eighteenth Report").

Plaintiff does not allege that Netflix provides internet services, which are provided by third party ISPs, *see generally* Compl., and it does not.  ISPs provide Internet access services in one of several ways, including:  (1) "cable" broadband services, which rely on a combination of fiber optic and coaxial cable; (2) "fiber" or digital subscriber line connections provided by telephone companies over their landline networks; (3) "cellular," which provides wireless Internet access through cell towers and cell phones; (4) "fixed wireless" Internet, which uses microwave radio signals and specialized receivers; and (5) "satellite," which transmits Internet content between a satellite in Earth's orbit and earth stations.  ISPs in Ohio include AT&T and Comcast (Xfinity).[2]

Plaintiff also does not allege that Netflix is a cable television company or a cable service provider, *see generally* Compl., which it is not.  Cable television is a system for delivering

---

[2] *See In re Commc'ns Marketplace Report*, FCC 18-181 ¶¶ 6, 173 n.523, 174, 201, 2018 WL 6839365 (Dec. 26, 2018) (analyzing competition among major ISPs).

programming to consumers via radio frequency signals transmitted through fiber optic and coaxial cables.  This contrasts with:  (1) broadcast television, in which the signal is transmitted over the air by radio waves and received by an antenna; and (2) satellite television, in which the signal is transmitted by a satellite and received by a satellite dish.  Large cable television companies operating in Ohio include Charter and Cox Communications.  Eighteenth Report ¶ 18.

One feature that many ISPs and cable companies share is the need to establish networks of wires and other transmission and routing equipment to connect the computers, laptops, and televisions in people's homes and offices to servers and routers that host or transport the content requested or viewed by the consumer.  Not surprisingly, and similar to telephone wires and cables, many of these Internet and cable television networks need to be placed in a public right-of-way.

Plaintiff does not allege that Netflix owns any network or any portion of a network located in an Ohio public right-of-way, *see generally* Compl., and it does not.  Netflix does not own any facilities or infrastructure capable of transmitting or otherwise delivering its streaming service directly to its subscribers.  *Kentucky v. Netflix*, Ex. 1, at 13.  To enhance its video speed and quality, Netflix uses a content delivery network ("CDN") called Open Connect to cache data closer to a consumer's geographical location, *see* Compl. ¶ 12; Eighteenth Report ¶ 137, but as the FCC has made clear, CDNs do *not* constitute or enable broadband Internet access service.  Declaratory Ruling, Report and Order, and Order, *In the Matter of Restoring Internet Freedom*, 33 FCC Rcd. 311, ¶ 190, 197, 201 (2018), *vacated in part on other grounds*, *Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019).  Instead, Netflix requires use of a third party ISP's Internet access service to transmit its video content to subscribers.  *See* Eighteenth Report ¶ 1 n.4.

### C.  The Ohio Law

Federal law permits state and local governments to impose a "franchise fee [on cable operators] as the consideration given in exchange for the right to use the public ways."  Report and

Order, *In the Matter of Implementation of Section 621(a)(1) of the Cable Communications Policy Act of 1984 As Amended by the Cable Television Consumer Protection. & Competition Act of 1992*, 22 FCC Rcd. 5101, ¶ 135 (2007) ("First Section 621 Order"), *petitions for review denied in pertinent part*, *Alliance for Cmty. Media v. FCC*, 529 F.3d 763 (6th Cir. 2008).  Before 2007, cable television companies wishing to use an Ohio public right-of-way had to negotiate franchise agreements with each individual municipality.  In 2007, however, the Ohio legislature enacted S. B. 117, Ohio Rev. Code § 1332.21 *et. seq.*, pursuant to which it designated the Ohio Director of Commerce as "the sole franchising authority" for a state-issued VSA.  *Id.* § 1332.24(A)(1), (2).

Under the Ohio Law, "no person shall provide video service" in Ohio, except pursuant to a VSA.  *Id.* § 1332.23(A).  The Ohio Law defines "video service" as "the provision of video programming over wires or cables located at least in part in public rights-of-way, regardless of the technology used to deliver that programming," but ***excluding***:  (1) "video programming provided to . . . subscribers to commercial mobile service"; and (2) "video programming provided solely as part of and via a service that enables users to access content . . . ***offered over the public [I]nternet***."  *Id.* § 1332.21(J) (emphasis added).  "Video programming," in turn, "has the same meaning as in the 'Cable Communications Policy Act of 1984,'" *id.* § 1332.21(I), that is, "programming provided by, or generally considered comparable to programming provided by, a television broadcast station."  *See* 47 U.S.C. § 522(20).  A "video service provider" is "a person granted a video service authorization."  Ohio Rev. Code § 1332.21(M).  Holders of a VSA are required to make quarterly franchise payments in each city in which they provide services generally up to 5% of gross revenues received from the provision of services in that city.  *Id.* § 1332.32.  Netflix does not hold a VSA.  Compl. ¶ 17.

## III.    STATEMENT OF ISSUES

A.     Whether the Ohio Law applies to Netflix;

B.    Whether the imposition of state or local franchise fees on Netflix is inconsistent with, and preempted by, the federal Communications Act of 1934, as amended, and long-standing FCC precedent, which prohibit the imposition of franchise fees on video content providers;

C.    Whether application of the Ohio Law to Netflix would violate the Internet Tax Freedom Act because it discriminates against e-commerce;

D.    Whether the Ohio Law violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the U.S. Constitution because it subjects only a limited group of speakers to franchise fees; and

E.    Whether this Court should refer the case to the Ohio Director of Commerce under the primary jurisdiction doctrine.

## IV.    RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal for failure to state a claim upon which relief can be granted. *Emahiser v. Complete Coverage Ins., LLP*, 53 F. Supp. 3d 1025, 1027 (N.D. Ohio 2014). While a court must accept as true all of the factual allegations contained in the complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sanders v. McDowell*, 44 F. Supp. 3d 731, 734 (N.D. Ohio 2014) (citation omitted). The allegations must be "more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do'" to prevent dismissal. *Erie Cty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 873 (6th Cir. 2012) (citation omitted).

## V.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED

### A.     The Ohio Law Does Not Apply to Netflix

#### 1.     Netflix Does Not Provide Video Programming Comparable to Programming Provided by a Television Broadcast Station.

The Ohio Law defines "video programming" as "programming provided by, or generally considered comparable to programming provided by, a television broadcast station."  *See* Ohio Rev. Code § 1332.21(I) (cross-referencing 47 U.S.C. § 522(20)).  The defining characteristic of broadcast television, however, is that it provides only linear, scheduled content, with various programs each hour, and the content is clearly associated with the time slot and, some of which— like sports, news, etc.—is aired "live."  *Kentucky v. Netflix*, Ex. 1, at 6.  Television broadcast stations are also subject to a host of FCC regulations, including, for example:  (1) time restrictions on the broadcast of material that might be considered obscene, indecent or profane, *see, e.g.*, 47 C.F.R. § 73.3999(b); and (2) limitations on commercial programming during children's programing, *see, e.g.*, 47 C.F.R. § 73.670(a).  Netflix, on the other hand, makes its content available fully on-demand, offers no live programming of any kind, and is not subject to FCC regulation.[3]

While no court in Ohio has addressed whether Netflix provides "video programming," the Kentucky Circuit Court considered whether Netflix offers "programming provided by or generally considered comparable to programming provided by a television broadcast station" under a law similar to the Ohio Law.  *Kentucky v. Netflix*, Ex. 1, at 12, 14-15.  The court held that it was "unreasonable to conclude that Netflix's streaming service is generally considered comparable to traditional cable and broadcast television services: ***the two could not be more different***."  *Id*. at 15 (emphasis added).

---

[3] *See* https://www.fcc.gov/news-events/blog/2018/06/01/fcc-regulatory-free-arena.

2.    **Even If Netflix Provided Video Programming Its Services Would Be Exempt Because They Are Offered Over the Public Internet.**

Assuming, incorrectly, that Netflix provides "video programming" as defined under the Ohio Law, Netflix still would not be required to pay franchise fees because the Ohio Law excludes from the definition of "video service" any "video programming provided solely as part of and via a service that enables users to access content . . . offered over the public [I]nternet."  Ohio Rev. Code § 1332.21(J).  Plaintiff makes no attempt to explain why this exception does not apply to Netflix.  Indeed, Plaintiff concedes that Netflix provides a service ("online streaming") through which subscribers access content ("a library of films and television programs") over the public Internet (using the subscribers' own "Internet-connected device to send a request to the Internet-service provider").  *See* Compl. ¶¶ 5, 11.  As a matter of law, therefore, Netflix is not providing video service, is not a video service provider, and cannot be required to pay franchise fees under the plain language of the statute.  Ohio Rev. Code § 1332.21(J).

3.    **Netflix Does Not Own or Operate a Video Service Network in the Public Right-of-Way.**

Under the Ohio Law, a holder of a franchise certificate is authorized to "construct and operate a video service network in, along, across, or on public rights-of-way."  Ohio Rev. Code § 1332.24(A)(1).  The Ohio Law defines a "video service network" to mean "wires or cables and associated facilities ***used to deliver*** video service."  *Id.* § 1332.21(L) (emphasis added).  As described above, however, Netflix does not "deliver" content directly to subscribers—that transmission functionality is provided by the subscriber's ISP.  *See* Eighteenth Report ¶ 128 (explaining that content providers like Netflix are not "tied to the provider's own facilities-based infrastructure" and instead "cover all regions capable of receiving high-speed Internet service" from an ISP).  Netflix's subscribers, using their own personal devices, connect to the Internet through their ISP and send requests to Netflix for particular pieces of content.  *See Kentucky v.*

8

*Netflix*, Ex. 1, at 12-13; Compl. ¶ 11.  The subscriber's ISP then relays that request to a Netflix server, and Netflix delivers that content to the subscriber's ISP, which is responsible for delivering it to its customer's device.  *See id.*

While Plaintiff references Netflix's Open Connect system in its Complaint, it concedes that the ISP—not the Open Connect system—actually delivers content to Netflix's members.  Compl. ¶ 15.  The Open Connect system is, instead, a CDN that consists of servers that cache data closer to a consumer's geographical location, which, tellingly, Plaintiff does not allege exist in any public right-of-way, Compl. ¶ 12, and which do not—by definition—provide broadband Internet access service.  Declaratory Ruling, Report and Order, and Order, *Restoring Internet Freedom*, 33 FCC Rcd. 311, ¶ 190, 197, 201 (2018).  Any assertion by Plaintiff that Netflix's Open Connect system is "used" for the transmission of video programming over wires or cables directly to subscribers would therefore be "bizarre."  *AT&T Communications of the Southwest, Inc. v. City of Austin, Tex.,* 40 F. Supp. 2d 852, 855-56 (W.D. Tex. 1998) (rejecting as "bizarre" Austin's asserted right to impose right-of-way fees on AT&T by virtue of its electromagnetic radiation traveling through *another company's* local landline facilities), *vacated as moot*, 235 F.3d 241 (5th Cir. 2000).

### B.     Federal Law Preempts State and Local Attempts to Impose Franchise Fees on Netflix

The Communications Act of 1934, as amended, 47 U.S.C. § 151 *et seq.* (the "Communications Act"), and the FCC's implementing orders confirm that:  (1) franchise fees are applicable only to video providers that deliver video programming via their own facilities deployed in the public rights-of-way (namely, cable operators); and (2) federal law preempts any contrary interpretation of Ohio law that would extend franchise fee obligations to video content providers.

Federal law authorizes states and municipalities to impose franchise fees only within the terms of the federal framework, *see* 47 U.S.C. §§ 541, 542, 556(c) ("Except as provided in section

557 of this title, any provision of law of any State, political subdivision, or agency thereof, or franchising authority . . . which is inconsistent with this chapter shall be deemed to be preempted and superseded.").  The franchise fee regime created by the Ohio Law exists within, and is limited by, the federal framework, both by virtue of the Supremacy Clause of the U.S. Constitution and under the terms of the Ohio Law itself—which expressly incorporates terms from the Communications Act.  *See, e.g.*, Ohio Rev. Code §§ 1332.21(I) (incorporating federal definition of "Video programming"); 1332.24(A)(2) ("For the purposes of the 'Cable Communications Policy Act of 1984,' . . . a video service authorization shall constitute a franchise under that law[.]"); 1332.34 ("Nothing in sections 1332.21 to 1332.33 of the Revised Code is intended to be inconsistent with the 'Cable Communications Policy Act of 1984[.]'").  Ohio Rev. Code § 1332.32, explicitly draws directly from the federal franchise fee statute.  *See* 47 U.S.C. § 542(b).

### 1.    The Text and Structure of the Communications Act Make Clear That Franchise Fees May be Imposed *Only* for "Cable Services."

Congress established the franchising framework in the Cable Communications Policy Act of 1984 ("1984 Cable Act"), which was intended to "establish franchise procedures and standards" to "encourage the growth and development of cable systems" while "assur[ing] that cable systems are responsive to the needs and interests of the local community."  47 U.S.C. § 521.  The franchise provisions in the 1984 Cable Act refer exclusively to cable operators and services.  *See, e.g.*, 47 U.S.C. §§ 542(g) (defining "franchise fee" as limited to "cable operator[s]"); 541(a)(2) (awarding a franchise "authorize[s] the construction of a cable system").  In 1996, Congress eliminated any ambiguity as to the limitations on local franchise fee authority, amending 47 U.S.C. § 542(b) to clarify that such revenues could be included only if they came from "the operation of the cable system *to provide cable services*."  Pub. L. No. 104-104, § 303(b), 110 Stat 56, 125 (emphasis

added).  These limitations prohibit franchise fees for the provision of *non-cable services*, and state

and local attempts to impose fees for such services are preempted.  *See* 47 U.S.C. § 556(c).

### 2. Binding Federal Communication Commission Precedent Further Confirms that Franchise Fees Based on the Provision of Non-Cable Services Are Preempted.

The Supreme Court has long recognized that "[f]ederal regulations have no less pre-

emptive effect than federal statutes," *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S.

141, 153 (1982), and that "a federal agency acting within the scope of its congressionally delegated

authority may pre-empt state regulation and hence render unenforceable state or local laws that are

otherwise not inconsistent with federal law." *City of New York v. FCC*, 486 U.S. 57, 63-64 (1988)

(internal quotes omitted).  Construing 47 U.S.C. § 541, the FCC has recognized that franchise fee

authority is limited to "the provision of cable services over cable systems."  First Section 621

Order, 22 FCC Rcd. 5101 ¶ 121.  In the same order, the FCC specifically found:  "Local regulations

that ***attempt to regulate any non-cable services offered by video providers are preempted*** because

such regulation is beyond the scope of local franchising authority and is inconsistent with the

definition of 'cable system' in [47 U.S.C. § 522(7)(C)]."  *Id.* ¶ 122 (emphasis added).[4]

That the Ohio Law refers to a "video service provider fee" rather than a "franchise fee,"

does not save it from preemption.  The Ohio Law makes clear that a "[VSA] shall constitute a

franchise" under the Cable Act.  Ohio Rev. Code § 1332.24(A)(2).  Moreover, the FCC recently

reaffirmed its broad preemption of state efforts to impose franchise fees by giving what is clearly

a fee a different label.  After the Supreme Court of Oregon upheld a state "telecommunications

---

[4] Although the First Section 621 Order by its terms applied only to local franchise authorities, the FCC has subsequently clarified that the First Section 621 Order also applies to state actions and regulations.  *See* Third Report and Order, *In the Matter of Implementation of Section 621(a)(1) of the Cable Commc'ns Policy Act of 1984 As Amended by the Cable Television Consumer Prot. & Competition Act of 1992*, 34 FCC Rcd. 6844 ¶ 111 (2019) ("Third Section 621 Order").

license fee" on broadband services, *City of Eugene v. Comcast of Oregon II*, 375 P.3d 446, 459 (Or. 2016), the FCC repudiated that decision and ordered instead that such fees are preempted. Third Section 621 Order, 34 FCC Rcd. 6844 ¶ 80, 106. Ohio may not evade the Communications Act restrictions on franchise fees by calling them something else, and it is preempted from extending franchise fees to entities that do not deploy cable systems in public rights-of-way.

Construing the Ohio Law to cover Netflix's services would also interfere with important federal objectives promoting broadband deployment. *See, e.g.*, *Fidelity Fed. Sav. & Loan Ass'n*, 458 U.S. at 153 (holding that a "state law [that] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of" a federal regulation is preempted); *see also* Ohio Rev. Code § 1332.22(C) ("Enhancing the existing broadband infrastructure and increasing consumer access to robust and reliable broadband products and services are important, statewide concerns."). Congress directed the FCC in the Telecommunications Act of 1996 to take action within its authority to promote broadband deployment. *See* 47 U.S.C. § 1302. More recently, the Ninth Circuit upheld the FCC's 2018 conclusion that excessive fees—and in particular fees that do not correspond to a "government's approximate costs" in managing public rights-of-way— unlawfully impede broadband deployment. *See City of Portland v. United States*, 969 F.3d 1020, 1035-36 (9th Cir. 2020). As Netflix is a video content provider, not the operator of a cable system within the public rights-of-way, the Netflix service does not give rise to any costs for any Ohio municipality to recoup via a franchise fee. *See, e.g.*, Third Section 621 Order, 34 FCC Rcd. 6844 ¶ 84 ("[A] cable operator may apply for and obtain a franchise to access and operate facilities in the local rights-of-way, and in exchange, a franchising authority may impose fees and other requirements as set forth and circumscribed in the Act."). Nor does the Ohio Law provide any other cost-based rationale to impose fees on providers of video content distributed over the

Internet.  Imposing a five percent fee on Netflix's revenues—when Plaintiff does not even allege Netflix owns any facilities in the public rights-of-way—would chill demand for broadband Internet access services and in turn obstruct the federal policy of promoting broadband deployment.

### C.  The Internet Tax Freedom Act Prohibits Discriminatory Treatment of E-Commerce

The Internet Tax Freedom Act ("ITFA") prohibits states and localities from implementing "discriminatory taxes on electronic commerce."  47 U.S.C. § 151 (note), § 1101(a)(2).  Because the Ohio Law directly conflicts with the ITFA, under the Supremacy Clause of the U.S. Constitution, Plaintiff's claims must be dismissed. *See* U.S. Const. art. VI, cl. 2.

The ITFA prohibits states and municipalities from enacting certain taxes on "electronic commerce," which includes the delivery of services over the Internet or through Internet access, whether or not for consideration.  47 U.S.C. § 151 (note), § 1105(3).  Plaintiff alleges that Netflix "deliver[s] the video programming via Internet protocol technology."  Compl. ¶ 11.[5]  As Plaintiff concedes that Netflix is engaged in "electronic commerce," its declaratory relief claim is preempted if the fee Plaintiff seeks to impose falls within the ITFA's definition of a "tax."

Taxes under ITFA include "any charge imposed by any governmental entity for the purpose of generating revenues for governmental purposes, and is not a fee imposed for a specific privilege, service, or benefit conferred." *Id.* § 1105(8).[6]  While states and localities often use the terms "tax" and "fee" interchangeably, courts look to the substance of the transaction:  "The Sixth Circuit

---

[5] As discussed above, Netflix disputes that it delivers "video programming" under the Ohio Law, but even assuming, for purposes of argument, that its service falls within the definition of "video programming," the imposition of the fee would violate the ITFA.

[6] 47 U.S.C. § 151 (note), § 1105(8)(B) excepts from the definition of "tax," "any franchise fee or similar fee imposed by a State or local franchising authority, pursuant to section 622 or 653 of the Communications Act of 1934 (47 U.S.C. 542, 573), or any other fee related to obligations or telecommunications carriers under the Communications Act of 1934 (47 U.S.C. 151 et seq.)." *Id.*  Since the franchise fees provided for under the Ohio Law are not permitted under 47 U.S.C. § 542, this exception does not apply.

utilizes a three-factor test to determine whether a government assessment is a tax [and considers]: (1) the entity that imposes the assessment, *i.e.* legislative body acting in legislative capacity or regulatory administrative agency; (2) the parties upon whom the assessment is imposed; and (3) whether the revenue raised by the assessment is expended for general public purposes, or instead for the benefit of the parties upon whom the assessment is imposed." *Chattanooga Gas Co. v. City of Chattanooga*, No. 1:04-cv-00214, 2007 WL 1387505, *9 (E.D. Tenn. May 7, 2007) (citation omitted).[7]  Applying this definition, the franchise "fees" imposed by the Ohio Law are taxes, as they are not imposed or collected by any regulatory agency, but are instead imposed by an act of the state legislature and collected by municipalities for their general purposes,[8] and, particularly with respect to Netflix, the fee does not convey any *specific* privilege, service, or benefit.  Netflix's content is delivered through an ISP, and thus the only privileges, services, or benefits conferred on Netflix are essentially the same as those of any other person that maintains a public website—the ability for their content to travel through the public right-of-way *by a third-party*.

Ohio's franchise fee also violates the ITFA's prohibition on discriminatory taxes.  A "discriminatory tax" under the ITFA includes any tax that "is not generally imposed and legally collectible by such State or such political subdivision on transactions involving similar property, goods, services, or information accomplished through other means."  47 U.S.C. § 151 (note),

---

[7] The analysis in *City of Chattanooga* centered on whether the charge was a "tax" under the Tax Injunction Act ("TIA").  *See* 28 U.S.C. § 1341.  Its analysis is equally relevant for purposes of the ITFA.  *See Cox Commc'ns Hampton Rds., LLC v. King*, No. (Civil) CL19-3711, 2020 Va. Cir. LEXIS 123, *9 (Va. Cir. Ct. Aug. 14, 2020) ("The Court concludes that Congress intended to incorporate a mutually exclusive interpretation of the words 'tax' and 'fee' into the ITFA, consistent with the TIA.")  *See also Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000) (outlining three-part test).

[8] Under the Ohio Law's express terms, all revenues flow with no restriction on their use to the cities, not the Department of Commerce, the state's regulatory agency.  *See* Ohio Rev. Code § 1332.32(A) (video service provider "shall pay a video service provider fee to each municipal corporation and each township in which it offers video service"); *see also*, *e.g.*, City of Upper Arlington, Ohio Code of Ordinances § 777.10(D)(1) ("These payments shall be known as the annual franchise fee and shall be credited to the general fund, City of Upper Arlington.").

§ 1105(2)(A).  Plaintiff alleges that Netflix provides a service that is comparable to services provided by television broadcast stations.  Compl. ¶ 9.  Taking that allegation as true for purposes of this argument only, Plaintiff must also acknowledge that both Netflix and television broadcast stations deliver content in similar ways— through the use of an intermediary (in the case of a television broadcast station, a cable or satellite company and in the case of Netflix, an ISP).  The franchise fee, however, cannot be imposed and legally collectible against television broadcast stations.  *See* 47 U.S.C. § 542; First Section 621 Order ¶¶ 121-122.  To impose the franchise fee on Netflix thus would discriminate against the Internet delivery of the Netflix service, which is expressly prohibited by the ITFA.

The Ohio Law is also discriminatory because it does not apply to mobile service providers or satellite service providers.  *See* Ohio Rev. Code § 1332.21(J); *see also* Final Analysis, Ohio Legislative Service Commission, *Am. Sub. S.B. 117* at 6 (Sept. 24, 2007) (analyzing the Ohio Law and concluding that the act "excludes satellite service, because that service does not use wires or cables for transmission") (citing Ohio Rev. Code § 1332.21(J)).  Video providers that distribute content solely over mobile broadband connections or satellite are thus given preferential treatment over Netflix, which distributes content over fixed and mobile connections, even though these speakers are similarly situated in that neither provides any facilities in the public rights-of-way.  It is both discriminatory and illogical to tax the same service differently depending on whether a Netflix subscriber watches video content on a laptop or on a smart phone.

## D.  The Ohio Law Violates the First Amendment

Because imposing financial burdens on some speakers but not others "poses a particular danger of abuse by the State[s]," *Ark. Writers' Project v. Ragland*, 481 U.S. 221, 228 (1987), the First Amendment requires courts to be "deeply skeptical of laws that 'distinguis[h] among different speakers . . . .'" *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2378 (2018)

(alteration in original) (quoting *Citizens United v. FEC*, 558 U.S. 310, 340 (2010)).  As a result, "[w]hen speakers . . . are similarly situated, the state may not pick and choose."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 55 (1983); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011) (striking down state law that "disfavor[ed] specific speakers").  In addition, under the First Amendment and the Due Process Clause of the United States Constitution, "speakers are protected from arbitrary and discriminatory enforcement of vague standards."  *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998).  The Ohio Law as applied violates these core constitutional principles in three ways, each independently requiring dismissal.

### 1. As Applied, the Ohio Law Unconstitutionally Discriminates Between Mobile and Wireline Video Providers.

The Ohio Law imposes fees based on gross revenues including subscriber fees for "video service," *see* Ohio Rev. Code §§ 1332.21(J), 1332.23, but not all video service providers are treated the same.  Most notably, the definition of "[v]ideo service" "excludes video programming provided to persons ***in their capacity as subscribers to commercial mobile service***."  *Id.* § 1332.21(J) (emphasis added).

Providers of video service "engage in and transmit speech" and are therefore speakers under the First Amendment.  *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 636 (1994) ("There can be no disagreement on an initial premise:  Cable programmers and cable operators engage in and transmit speech, and they are entitled to the protection of the speech and press provisions of the First Amendment."); Report and Order, *In the Matter of Preserving the Open Internet*, 25 FCC Rcd. 17905 ¶ 16 (2010) (recognizing that "[t]elevision and radio broadcasters now provide news and other information online via . . . online aggregation websites such as Hulu"), *vacated in part on other grounds in Verizon v. FCC*, 740 F.3d 623 (D.C. Cir. 2014).  Singling out video providers based upon the mechanism used to transmit content (wireline broadband connections versus

16

mobile connections) thus triggers heightened scrutiny under the First Amendment.  *See Reed v. Town of Gilbert*, 576 U.S. 155, 170 (2015) (laws that single out particular speakers "demand strict scrutiny when the legislature's speaker preference reflects a content preference"); *Turner Broad. Sys., Inc.*, 512 U.S. at 640-41 ("[L]aws that single out the press, or certain elements thereof, for special treatment . . . are *always* subject to at least some degree of heightened First Amendment scrutiny." (emphasis added)); *Comcast of Maine/New Hampshire, Inc. v. Mills*, 435 F. Supp. 3d 228, 248 (D. Me. 2019) (applying intermediate scrutiny to state law that treated cable operators differently from other types of video programming providers).

As applied in this action, the Ohio Law unconstitutionally discriminates between video providers that distribute content solely over mobile broadband connections and video providers that distribute content over fixed and mobile connections.  Plaintiff does not allege—and cannot provide—any justification for granting preferential treatment to video providers that distribute content solely over mobile broadband connections.  Indeed, as Plaintiff does not allege that Netflix provides any facilities in the public rights-of-way—which makes it indistinguishable from video providers that distribute content over mobile broadband connections—it is difficult to imagine any conceivable justification.[9]  *See Comcast of Maine/New Hampshire, Inc.*, 435 F. Supp. 3d at 248-50 (preliminarily enjoining law that discriminated among speakers, citing government's failure to identify justification for discrimination in legislative record).

### 2.  As Applied, the Ohio Law is Unconstitutionally Vague.

The overbroad interpretation of the Ohio Law that Plaintiff advances in this action also violates the First Amendment and Fourteenth Amendment's Due Process Clause, under which

---

[9] For an example of an "exclusively mobile" video service, see Joan E. Solsman, *Quibi: Everything to know about the $5 short-form video service*, CNET (June 28, 2020), https://www.cnet.com/news/quibi-everything-to-know-prices-shows-release-dates/ (last accessed Oct. 19, 2020).

"speakers are protected from arbitrary and discriminatory enforcement of vague standards." *Nat'l Endowment for the Arts*, 524 U.S. at 588.  In particular, the Ohio Law imposes fees on any video provider that "provide[s] [its] video service to [] subscribers through wireline facilities located at least in part in the public right-of-way."  Compl. ¶ 15.  If the Ohio Law is interpreted to cover Netflix, as Plaintiff seeks, then it also would apply to virtually any video streamed by Ohio consumers, including HBO Max, ESPN, Amazon Prime, and YouTube, despite the fact that none of these services operate any wireline facilities of their own.  *See* Eighteenth Report, 32 FCC Rcd. 568 ¶¶ 151-53 (noting that "[s]treaming video accounts for a large and growing percentage of total Internet traffic" and that "[t]he OVD [Online Video Distributor] marketplace continues to expand") and ¶ 132 (listing OVDs).  This sort of breadth and uncertainty is not permitted when states regulate speech and speakers, because vague laws touching on expression create an "impermissible risk of discriminatory enforcement." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1051 (1991); *see also NAACP v. Button*, 371 U.S. 415, 432 (1963) ("[S]tandards of permissible statutory vagueness are strict in the area of free expression."); *Finley*, 524 U.S. at 588.

### 3. Plaintiff Unconstitutionally Attempts to Enforce the Ohio Law Against Just *Two* Speakers in This Action.

The risk of discriminatory enforcement is not hypothetical in this case, as despite Plaintiff's exceedingly broad interpretation of the Ohio Law, which would subject myriad online video providers to fees, Plaintiff seeks to enforce the law only against Netflix and Hulu, exempting many of their principal competitors.  Governments, however, cannot constitutionally "pick and choose" among similarly situated speakers.  *Perry Educ. Ass'n*, 460 U.S. at 55; *see also Nat'l Inst. of Family & Life Advocates*, 138 S. Ct. at 2378; *Sorrell*, 564 U.S. at 564; *Ragland*, 481 U.S. at 228.  Plaintiff has offered *no* justification for singling out these speakers for enforcement and deciding *not* to seek enforcement against any other streaming company, let alone other companies that in fact

18

"provide their video service to [] subscribers through wireline facilities located at least in part in the public right-of-way."  Compl. ¶ 15.  There is none. Plaintiff has not and cannot meet the heightened scrutiny required by state action that discriminates among speakers.  *See Reed*, 576 U.S. at 170; *Turner Broad. Sys., Inc.*, 512 U.S. at 641.  Its actions are therefore unconstitutional.

> **E.**  **In the Alternative, this Court Should Refer the Case to the Ohio Director of Commerce Under the Primary Jurisdiction Doctrine**

If, despite all of the defects described above, this Court is nonetheless disinclined to dismiss Plaintiff's complaint in its entirety, under the doctrine of primary jurisdiction, this Court should refer the case to the Ohio Director of Commerce to determine in the first instance whether Netflix is required to obtain a VSA and whether it must pay video service provider fees.  *See Lazarus v. Ohio Cas. Grp.*, 761 N.E.2d 649, 654-55 (Ohio App. Ct. 2001).  Primary jurisdiction applies where, as here, courts and agencies both have authority to make an initial determination in a dispute.  *Id.*; *see* Ohio Rev. Code § 1332.24(A)-(C) (Director of Commerce has authority to issue VSAs, to "investigate alleged violations of or failures to comply with [VSA requirements], or complaints concerning any such violation or failure," and to impose penalties for violations).  The doctrine allows courts to refer to the relevant agency matters that involve "the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."  *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010).  Courts do so where referral will "advance regulatory uniformity," or the matter involves a question within the agency's discretion and expertise.  *Id.*  Ohio's regulatory scheme undoubtedly places issues of VSAs within the discretion and expertise of the Director of Commerce.  *See, e.g.*, Ohio Rev. Code § 1332.24; *cf. Charvat*, 630 F.3d at 467 (primary jurisdiction exercised because plaintiff "pursue[d] only claims that depend on the meaning of a federal statute that the FCC administers").  And the Ohio Law gives the Director of Commerce this authority precisely in order

to "provide a **uniform** regulatory framework."  Ohio Rev. Code § 1332.22(H) (emphasis added).

These principles apply with greater force where, as here, a novel interpretation is advanced that

would have far-reaching consequences.  *See Charvat*, 630 F.3d at 466 (emphasizing the "volume"

of potential cases that its ruling would affect).  The Court should refer this case to the Director of

Commerce and dismiss Plaintiff's complaint, because a determination that Netflix is not subject

to the Ohio Law would be dispositive with respect to all of Plaintiff's allegations, and Plaintiff

will suffer no prejudice while the matter is before the Director of Commerce.

## VI.    CONCLUSION

Plaintiff's attempt to drastically and impermissibly expand the scope of the Ohio Law to

include video content providers like Netflix must fail as a matter of law.  Netflix is simply not a

video service provider subject to the Ohio Law.  Even if it were, imposition of state or local

franchise fees on Netflix is inconsistent with, and preempted by the federal Communications Act

of 1934 and long-standing FCC precedent, violates the Internet Tax Freedom Act and is

unconstitutional.  For all of these independent reasons, Plaintiff's complaint should be dismissed.

Dated:  October 19, 2020

Respectfully submitted,

*/s/ Amanda Martinsek*
Amanda Martinsek (0058567)
ULMER & BERNE
1660 West 2nd Street, Suite 1000
Cleveland, OH 44113
Tel.: (216) 583-7450
Email: amartinsek@ulmer.com

Mary Rose Alexander (*pro hac vice*)          Jean A. Pawlow (*pro hac vice*)
Robert C. Collins III (*pro hac vice*)          LATHAM & WATKINS LLP
LATHAM & WATKINS LLP                          555 Eleventh Street, N.W., Suite 1000
330 North Wabash Avenue, Suite 2800     Washington, DC  20004
Chicago, IL 60611                                     Tel.:  (202) 637-3331
Tel: (312) 876-7700                                  Email: jean.pawlow@lw.com
Email: mary.rose.alexander@lw.com
Email: robert.collins@lw.com

*Counsel for Defendant Netflix, Inc.*

20

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on October 19, 2020, a copy of the foregoing was filed electronically and sent to all counsel of record by operation of the Court's CM/ECF System.

*/s/ Amanda Martinsek*
*Counsel for Defendant Netflix, Inc.*