## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **CITY OF MAPLE HEIGHTS, OHIO,** *et al.*, | ) ) ) | |
| **Plaintiffs,** | ) ) | **CASE NO.: 1:20-CV-01872** |
| **v.** | ) ) | **JUDGE JAMES S. GWIN** |
| **NETFLIX, INC., et al.,** | ) ) ) | **MAGISTRATE JUDGE THOMAS M. PARKER** |
| **Defendants.** | ) ) | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM OF DEFENDANT NETFLIX, INC.

Defendant Netflix, Inc. ("Netflix") hereby responds to the putative Class Action Complaint ("Complaint") of Plaintiff City of Maple Heights ("Plaintiff"), with the following Answer and Affirmative Defenses. Netflix denies all allegations contained in section headings or other portions of the Complaint that are not contained within specifically numbered paragraphs. Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the Complaint that are directed toward Defendant Hulu, LLC ("Hulu") and on that basis, denies all such allegations. Netflix's responses to any paragraph's allegations also apply to the allegations of any footnote in that same paragraph. All allegations, if not expressly admitted, are denied.

## INTRODUCTION

1. Defendants provide video service in Ohio municipalities. When doing so, they use wireline facilities (*i.e.*, broadband wireline facilities) located at least in part in public rights-of-way.

**ANSWER**: The allegations in Paragraph 1 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations.

1

Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 1 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof.  Netflix affirmatively states that it is a producer and distributor of on-demand video content but that it is not an Internet service provider or a cable service provider and does not own or operate any network, infrastructure, or wireline facilities in the public right-of-way.  Netflix admits that it has subscribers in various Ohio municipalities.  Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 1.

2.      Accordingly, Defendants should be and are required by law to pay each of those municipalities a video service provider fee of up to 5% percent of their gross revenue, as derived from their providing video service in that municipality.

**ANSWER**:      The allegations in Paragraph 2 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 2 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof.  Netflix affirmatively states that it is a producer and distributor of on-demand video content but that it is not an Internet service provider or a cable service provider and does not own or operate any network, infrastructure, or wireline facilities in the public right-of-way.  Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 2.

3.      Defendants have failed to pay the required fee, necessitating this lawsuit, and entitling Plaintiff and the putative class to the relief requested herein.

**ANSWER**:      The allegations in Paragraph 3 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 3 that relate to Hulu and on that basis, denies those allegations and

demands strict proof thereof.  The allegations in Paragraph 3 are Plaintiff's characterization of

this matter and therefore require no answer.  Netflix denies that it was required or is currently

required to pay any fee under O.R.C. §§ 1332.21 *et seq.* (the "Ohio Law").  Netflix denies that

Plaintiff and the putative class are entitled to any relief whatsoever or that Netflix has violated

the Ohio Law.  Netflix denies any and all remaining allegations and/or legal conclusions

contained in Paragraph 3.

## PARTIES

### *Plaintiff*

4.      City of Maple Heights, Ohio ("Maple Heights") is a lawfully existing Ohio municipal corporation located in Cuyahoga County, Ohio.

**ANSWER**:    Netflix lacks knowledge and information sufficient to form a belief as to

the truth or falsity of the allegations in Paragraph 4 and therefore denies them.  Netflix denies

any and all remaining allegations and/or legal conclusions contained in Paragraph 4.

### *Defendants*

5.      Netflix, Inc. ("Netflix") is a Delaware corporation, headquartered in Los Gatos, California. Netflix's primary business is its video service, which offers online streaming of a library of films and television programs, as well as the distribution and production of original films and television series. Netflix does business in Maple Heights, Ohio and has done so at all times relevant to this action.

**ANSWER**:    The allegations in Paragraph 5 state, in part, legal conclusions to which

no response is required, but to the extent a response is required, Netflix denies those allegations.

To the extent Paragraph 5 may be construed to contain allegations of fact, Netflix admits it is a

Delaware corporation headquartered in Los Gatos, California.  Netflix admits that it offers

online, on-demand streaming of certain films and television programs, as well as the

distribution and production of original films and television series.  Netflix denies that it

provides "video service" or that its "primary business" is "video service," as defined by the

Ohio Law.  Netflix denies any and all remaining allegations and/or legal conclusions contained

in Paragraph 5.

6.      Hulu, LLC ("Hulu") is a Delaware limited liability company, headquartered in Santa Monica, California. Hulu's primary business is its video service, which offers online streaming of live video programming and a library of films and television programs, as well as the distribution and production of original films and television series. Hulu does business in Maple Heights, Ohio and has done so at all times relevant to this action.

**ANSWER**:      The allegations in Paragraph 6 are directed only to Hulu and, as such, do

not require a response by Netflix.  Netflix is without knowledge or information sufficient to form

a belief as to the truth or falsity of the allegations in Paragraph 6 that relate to Hulu and on that

basis, denies those allegations and demands strict proof thereof.  Netflix denies any and all

remaining allegations and/or legal conclusions contained in Paragraph 6.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  Defendants are citizens of a state different from that of Plaintiff, the putative class size is greater than 100, and the aggregate amount in controversy for the proposed Class exceeds $5,000,000.00, exclusive of interest and costs.

**ANSWER**:      The allegations in Paragraph 7 state legal conclusions to which no

response is required.  Netflix is without knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations in Paragraph 7 that relate to Hulu and on that basis, denies

those allegations and demands strict proof thereof.  To the extent a response is required, Netflix

admits that Plaintiff purports to assert jurisdiction pursuant to 28 U.S.C. § 1332(d), and Netflix

further admits that this Court has subject matter jurisdiction to hear the claims alleged in the

Complaint.  Except as expressly admitted, Netflix denies any and all remaining allegations

and/or legal conclusions contained in Paragraph 7.  Netflix denies that Plaintiff and the putative

class are entitled to any relief whatsoever.

8.      Venue is proper in this District, and this Court has personal jurisdiction over Defendants, pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b), because a substantial part

of the events giving rise to the claims occurred in this District, and because Defendants "transact affairs" in this District; each Defendant continuously and systematically engaged in and continues to engage in business in this District.

**ANSWER**:     The allegations in Paragraph 8 state legal conclusions to which no

response is required.  Netflix is without knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations in Paragraph 8 that relate to Hulu and on that basis, denies

those allegations and demands strict proof thereof.  To the extent a response is required, Netflix

admits that Plaintiff purports to assert that venue is proper in this District pursuant to 28 U.S.C.

§ 1391.  Netflix further admits that Plaintiff purports to assert that this Court has personal

jurisdiction over Netflix.  Except as expressly admitted, Netflix denies any and all remaining

allegations and/or legal conclusions contained in Paragraph 8.

## FACTUAL ALLEGATIONS

9.     Defendants provide video service to their subscribers to view television shows, movies, documentaries, and other programming.[1] They compete with other video service providers,[2] offering video programming[3] that is comparable to that provided by cable companies and television-broadcast stations.

**ANSWER**:     The allegations in Paragraph 9, including the footnotes thereto, state legal

conclusions to which no response is required, but to the extent a response is required, Netflix

---

[1] "Video service" means the provision of video programming over wires or cables located at least in part in public rights-of-way, regardless of the technology used to deliver that programming, including Internet protocol technology or any other technology. The term includes cable service, but excludes video programming provided to persons in their capacity as subscribers to commercial mobile service, as defined in the "Telecommunications Act of 1996," Pub. L. No. 104-104, Title VII, Sections 704(a) and 705, 110 Stat. 61, 151, 153, 47 U.S.C. 332; video programming provided solely as part of and through a service that enables users to access content, information, electronic mail, or other services offered over the public Internet. *See* O.R.C. § 1332.21(J).

[2] "Video service provider" means a person granted a video service authorization under sections 1332.21 to 1332.34 of the Revised Code. *See* O.R.C. § 1332.21(M).

[3] "Video programming" has the same meaning as in the "Cable Communications Policy Act of 1984," Pub. L. No. 98-549, 98 Stat. 2781, 47 U.S.C. 522 ["the term "video programming" means programming provided by, or generally considered comparable to programming provided by, a television broadcast station."]. *See* O.R.C. § 1332.21(I).

denies those allegations. Netflix is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations in Paragraph 9 that relate to Hulu and on that basis,

denies those allegations and demands strict proof thereof. To the extent a response is required,

Netflix admits that it offers online, on-demand streaming of television shows, movies,

documentaries, and other programming to subscribers. Netflix affirmatively states that it is not

an Internet service provider or a cable service provider and does not own or operate any network,

infrastructure, or wireline facilities in the public right-of-way. Netflix denies any and all

remaining allegations and/or legal conclusions contained in Paragraph 9.

10. Customers view Netflix's and Hulu's video programming—such as television shows, movies, and documentaries—using an Internet-connected device. Internet-connected devices are electronic devices that have software enabling them to stream Defendants' video programming, including smart televisions, streaming media players like Roku or Apple TV, smartphones, tablets, video game consoles, set-top boxes from cable and satellite providers, Blu-ray players, and personal computers.

**ANSWER**: The allegations in Paragraph 10 regarding "video programming" state

legal conclusions to which no response is required, but to the extent a response is required,

Netflix denies those allegations. Netflix is without knowledge or information sufficient to form

a belief as to the truth or falsity of the allegations in Paragraph 10 that relate to Hulu and on that

basis, denies those allegations and demands strict proof thereof. Netflix admits that its

subscribers can view on-demand video content using their own electronic devices that have

software enabling them to stream content via an Internet connection. Netflix affirmatively states

that it is a producer and distributor of on-demand video content but that it is not an Internet

service provider or a cable service provider and does not own or operate any network,

infrastructure, or wireline facilities in the public right-of-way. Netflix denies any and all

remaining allegations and/or legal conclusions contained in Paragraph 10.

11. When a subscriber wants to watch Netflix or Hulu video programming, he or she uses an Internet-connected device to send a request to the Internet-service provider. The Internet-

6

service provider then forwards that request to Netflix's and Hulu's dedicated Internet servers, which, in turn, provide a response. This response is then relayed back to the subscriber's device, and Netflix and Hulu deliver the video programming via Internet protocol technology (*i.e.*, broadband wireline facilities located at least in part in public rights-of-way).

**ANSWER**:     The allegations in Paragraph 11 regarding "video programming" state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations.  Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof.  Netflix admits that when a Netflix subscriber wants to view Netflix content on an Internet-connected electronic device, the subscriber's separate third-party Internet service provider will connect the subscriber to a Netflix server using a broadband Internet connection.  Netflix admits that on-demand video content can then be transmitted from a Netflix server over the Internet service provider's infrastructure to the subscriber's Internet-connected electronic device.  Netflix content is also available to subscribers using mobile devices, in which case they also must supply their own Internet connection (i.e., from their cellular provider).  Netflix denies that it "delivers" any "video programming."  Netflix affirmatively states that it is a producer and distributor of on-demand video content but that it is not an Internet service provider or a cable service provider and does not own or operate any network, infrastructure, or wireline facilities in the public right-of-way.  Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 11.

12.     During the relevant time period, Netflix has used a content delivery network called Netflix Open Connect to deliver 100% of its video traffic to its subscribers. When a Netflix subscriber wants to view Netflix programming, the subscriber's Internet service provider will connect the subscriber to the closest Netflix Open Connect server offering the fastest speeds and best video quality.

**ANSWER**:     Netflix affirmatively states that at certain times and in certain locations it has used a content delivery network called Netflix Open Connect to cache data closer to a

subscriber's geographical location.  Netflix states that it began using Open Connect in 2011 and that its use of Open Connect has adjusted, evolved, and changed over time.  Netflix admits that it seeks to provide consistently high-quality video experience to its customers and that its goal is to localize Netflix traffic as close as possible to customers.  Netflix denies that subscribers connect directly to Open Connect servers, and affirmatively states when a Netflix subscriber wants to view Netflix content, the subscriber connects to a network controlled by an ISP, which connects to a Netflix server.  Except as expressly admitted, Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 12.

13.     According to Netflix, that means that most of its subscribers receive Netflix's video programming from servers either inside of, or directly connected to, the subscriber's Internet service provider's network within their local region. Netflix has "end-to-end" control of its entire Open Connect system, including any servers located in Maple Heights and other Ohio municipalities.

**ANSWER**:     The allegations in Paragraph 13 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations.  To the extent that a response is required, Netflix denies that it has "end-to-end" control of its entire Open Connect system.  Netflix affirmatively states that it is a producer and distributor of on-demand video content but that it is not an Internet service provider or a cable service provider and does not own or operate any network, infrastructure, or wireline facilities in the public right-of-way.  Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 13.

14.     Similar to Netflix, when a Hulu subscriber wants to view Hulu's video programming, the subscriber's Internet service provider will connect the subscriber to the Hulu server. Hulu receives the directive and checks the subscriber's entitlement, the location, and the content availability. It then delivers the program through the Internet to the subscriber's Internet-connected device.

**ANSWER**:     The allegations in Paragraph 14 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations.

Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of

the allegations in Paragraph 14 that relate to Hulu and on that basis, denies those allegations and

demands strict proof thereof.  Netflix denies any and all remaining allegations and/or legal

conclusions contained in Paragraph 14.

15.     Defendants' subscribers typically use a broadband Internet connection, such as
DSL or fiber optic cable to receive Defendants' programming. In Maple Heights, common
providers include AT&T and Spectrum Broadband. These broadband Internet connections rely
upon wireline facilities located in whole or in part in the public right(s)-of-way to deliver
Internet service to subscribers. That means that Defendants operate and provide their video
service to Defendants' subscribers through wireline facilities located at least in part in the public
right-of- way.

**ANSWER**:     The allegations in Paragraph 15 state legal conclusions to which no

response is required, but to the extent a response is required, Netflix denies those allegations.

Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of

the allegations in Paragraph 15 that relate to Hulu and on that basis, denies those allegations and

demands strict proof thereof.  Netflix admits that Netflix subscribers must use a broadband

Internet connection, such as DSL or fiber optic cable to receive Netflix's programming on an

Internet-connected electronic device, such as a computer or smart television.  Netflix

affirmatively states that Netflix content is also available to subscribers using mobile devices, in

which case they also must supply their own Internet connection (*i.e.*, from their cellular

provider).  Netflix is without knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations regarding common Internet service providers in Maple Heights and

on that basis, denies those allegations and demands strict proof thereof.  Netflix affirmatively

states that it is a producer and distributor of on-demand video content but that it is not an Internet

service provider or a cable service provider and does not own or operate any network,

infrastructure, or wireline facilities in the public right-of-way.  Netflix denies any and all

remaining allegations and/or legal conclusions contained in Paragraph 15.

9

16.     As video service providers, Defendants were required to apply for and obtain prior authorization from the director of commerce of Ohio and provide ten days' advance, written notice to Plaintiff and other Ohio municipalities before it started providing its video service in those jurisdictions. *See* O.R.C. § 1332.23(A), O.R.C. § 1332.24(A)(1), and O.R.C. § 1332.27(A).

**ANSWER**:     The allegations in Paragraph 16 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 16 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof.  Netflix denies that it is a video service provider and further denies that it was required to apply for and obtain prior authorization from the Ohio Director of Commerce and provide ten days' advance, written notice to Plaintiff and other Ohio municipalities.  Netflix affirmatively states that it is a producer and distributor of on-demand video content but that it is not an Internet service provider or a cable service provider and does not own or operate any network, infrastructure, or wireline facilities in the public right-of-way. Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 16.

17.     Defendants failed to apply for, and therefore never received, authorization from the Ohio director of commerce, and Defendants failed to provide ten days' advance, written notice to Plaintiff and other Ohio municipalities, and, therefore, have been and continue to provide video service throughout Ohio without legal authorization, and in contravention of the Ohio Revised Code.

**ANSWER**:     The allegations in Paragraph 17 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 17 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof.  Netflix denies that it was required to apply for or receive authorization from the Ohio Director of Commerce and further denies that it was required to

provide ten days' advance, written notice to Plaintiff and other Ohio municipalities prior to

providing content to subscribers.  Netflix denies that it provides video service and further denies

that it is currently or ever has been in contravention of the Ohio Law.  Netflix denies any and all

remaining allegations and/or legal conclusions contained in Paragraph 17.

18.     Had Defendants provided the statutorily required ten days' advance, written
notice, then Plaintiff and other Ohio municipalities would have been provided an opportunity, as
set forth in the Ohio Revised Code, to notify Defendants of the percentage of gross revenues
required to be paid for providing video service in those jurisdictions (i.e. the video service
provider fee). *See* O.R.C. 1332.32(C)(1).[4]

**ANSWER**:     The allegations in Paragraph 18 state legal conclusions to which no

response is required, but to the extent a response is required, Netflix denies those allegations.

Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of

the allegations in Paragraph 18 that relate to Hulu and on that basis, denies those allegations and

demands strict proof thereof.  Netflix denies that it is or has ever been required to notify Plaintiff

or any Ohio municipality prior to providing its content to subscribers.  Netflix denies that it is

currently or ever has been required to pay any video service provider fee under the Ohio Law to

Plaintiff or any other Ohio municipality.  Netflix denies any and all remaining allegations and/or

legal conclusions contained in Paragraph 18.

19.     Many Ohio municipalities, including Maple Heights, have enacted local
ordinances that impose a video service provider fee of 5% on all video service providers.

**ANSWER**:     Netflix lacks knowledge and information sufficient to form a belief as to

the truth or falsity of the allegations in Paragraph 19 and on that basis, denies those allegations

and demands strict proof thereof.  Netflix denies any and all remaining allegations and/or legal

conclusions contained in Paragraph 19.

---

[4] *See also* Ohio Department of Commerce, FAQs for Local Governments, *available at*
https://www.com.state.oh.us/documents/vsa_LocalGovernmentFAQs.pdf.

20.     The Ohio director of commerce would have authorized video service providers such as Defendants to use public rights-of-way, as long as said video service provider makes a quarterly video service provider payment to each city in which it provides video service.  The required video service provider payment is up to 5% of gross revenues,[5] received by the video service provider from the provision of video services in that city. *See* O.R.C. § 1332.32.

**ANSWER**:     Netflix lacks knowledge and information sufficient to form a belief as to

the truth or falsity of the allegations in Paragraph 20 and on that basis, denies those allegations

and demands strict proof thereof.  The allegations in Paragraph 20 state legal conclusions to

which no response is required, but to the extent a response is required, Netflix denies those

allegations.  Netflix is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in Paragraph 20 that relate to Hulu and on that basis, denies

those allegations and demands strict proof thereof.  Netflix denies that it is a video service

provider and that it currently is required or ever has been required to pay any video service

provider fee to Plaintiff or any other Ohio municipality under the Ohio Law.  Netflix

affirmatively states that it is a producer and distributor of on-demand video content but that it is

not an Internet service provider or a cable service provider and does not own or operate any

network, infrastructure, or wireline facilities in the public right-of-way.  Netflix denies any and

all remaining allegations and/or legal conclusions contained in Paragraph 20.

21.     Defendants were required to receive authorization from the Ohio director of commerce and provide ten days' advance, written notice before providing video service in Maple Heights and the other Ohio municipalities in which they provide their video services. Defendants' failure to receive authorization and provide advance, written notice, however, did not relieve Defendants of the obligation to pay a video service provider fee of up to 5% of their gross revenues derived from providing such video service in those municipalities. *See* O.R.C. § 1332.32.

**ANSWER**:     The allegations in Paragraph 21 state legal conclusions to which no

response is required, but to the extent a response is required, Netflix denies those allegations.

---

[5] "Gross revenue" shall be computed in accordance with generally accepted accounting principles. *See* O.R.C. § 1332.32(B).

Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof.  Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 21.

22.      Defendants have failed to comply with § 1332.32 because they have failed to receive authorization and provide ten days' advance, written notice, directly resulting in the failure to pay Plaintiff and the other Class members the required video service provider fee of up to 5% of gross revenues.

**ANSWER**:      The allegations in Paragraph 22 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 22 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof.  Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 22.

23.      Plaintiff, individually and on behalf of other Ohio municipalities, seeks to require Defendants to abide by the Ohio Revised Code, and pay what they owe to these municipalities

**ANSWER**:      The allegations in Paragraph 23 are Plaintiff's characterization of this matter and therefore require no answer.  To the extent a response is required, Netflix admits that Plaintiff purports to make allegations and request relief under the Ohio Law.  Netflix denies that Plaintiff or any putative class member is entitled to any relief whatsoever.  Netflix denies that it is or ever has been in violation of the Ohio Law.  Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 23.

## CLASS ACTION ALLEGATIONS

24.      Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class defined as:

**All Ohio municipalities in which one or more of the Defendants has provided video service (the "Class").**

**ANSWER**:    The allegations in Paragraph 24 state legal conclusions to which no

response is required, but to the extent a response is required, Netflix denies those allegations.

To the extent that a response is required, Netflix admits that Plaintiff purports to bring this

action as a class action pursuant to Rules 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of

Civil Procedure on behalf of the class defined in Paragraph 24.  Netflix denies any and all

remaining allegations and/or legal conclusions contained in Paragraph 24 and expressly denies

that Plaintiff's claims are amenable to class treatment.

25.    Excluded from the Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

**ANSWER**:    The allegations in Paragraph 25 state legal conclusions to which no

response is required, but to the extent a response is required, Netflix denies those allegations.

Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations in Paragraph 25 that relate to Hulu and on that basis, denies those allegations

and demands strict proof thereof.  Netflix denies that this case may be properly maintained as a

class action under the criteria of Rule 23 of the Federal Rules of Civil Procedure.  Netflix

admits that Plaintiff purports to exclude the individuals and entities listed in Paragraph 25

from the proposed class and purports to reserve the right to modify or amend the definition of

the proposed class.  Netflix denies any and all remaining allegations and/or legal conclusions

contained in Paragraph 25 and expressly denies that Plaintiff's claims are amenable to class

treatment.

26.    This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

**ANSWER**:    The allegations in Paragraph 26 state legal conclusions to which no

response is required, but to the extent a response is required, Netflix denies those allegations.  To

the extent that a response is required, Netflix admits that Plaintiff purports to bring this case on

behalf of a proposed class under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

Netflix denies that this case may be properly maintained as a class action under the criteria of

Rule 23 of the Federal Rules of Civil Procedure.  Netflix denies any and all remaining

allegations and/or legal conclusions contained in Paragraph 26 and expressly denies that

Plaintiff's claims are amenable to class treatment.

27.    **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The proposed Class  is
sufficiently numerous that individual joinder of all Class members is impracticable. Indeed, the
Class size is believed to be hundreds of municipalities. Class members may be notified of the
pendency of this action by recognized, Court-approved notice dissemination methods, which may
include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**ANSWER**:    Netflix lacks knowledge and information sufficient to form a belief as to

the truth or falsity of the allegations in Paragraph 27 and on that basis, denies those allegations

and demands strict proof thereof.  The allegations in Paragraph 27 state legal conclusions to

which no response is required, but to the extent a response is required, Netflix denies those

allegations.  Netflix denies any and all remaining allegations and/or legal conclusions contained

in Paragraph 27 and expressly denies that Plaintiff's claims are amenable to class treatment.

28.    **Commonality and Predominance—Federal Rules of Civil Procedure  23(a)(2)
and 23(b)(3).** This action involves common questions of law and fact, which predominate over
any questions affecting only individual Class members, including, without limitation:

    a.  Whether Defendants provide video service, as defined by O.R.C. §
        1332.21(J), within Plaintiff's and the other Class members' geographic areas;

    b.  Whether Defendants are video service providers, as defined by O.R.C. §
        1332.21(M)

    c.  Whether Defendants were required to receive authorization from the Ohio
        director of commerce and provide ten days' advance, written notice to
        Plaintiff and other Ohio municipalities of such service;

    d.  Whether Defendants' failure to apply and obtain authorization and failure to
        provide ten days' advance, written notice to Plaintiff and other Ohio
        municipalities of such video service has relieved Defendants of their

obligation to pay video service provider fees pursuant to O.R.C. § 1332.32;

    e.   The appropriate measure of damages to award Plaintiff and the other Class members; and

    f.   The appropriate declaratory relief to which Plaintiff and the other Class members are entitled.

**ANSWER**:    The allegations in Paragraph 28 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 28 and expressly denies that Plaintiff's claims are amenable to class treatment.

29.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and each of the other Class members is entitled to video service provider fee payments from Defendants pursuant to O.R.C. § 1332.32, and Defendants have failed to pay Plaintiff and each of the other Class members those video service provider fees. Plaintiff is asserting the same claims and legal theories individually and on behalf of the other Class members.

**ANSWER**:    The allegations in Paragraph 29 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix denies that Plaintiff or any putative class member is entitled to video service provider fee payments from Netflix.  Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 29 and expressly denies that Plaintiff's claims are amenable to class treatment.

30.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class members who it seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where defendants breached statutory obligations, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and its counsel.

**ANSWER**:    The allegations in Paragraph 30 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations.

Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 30 and expressly denies that Plaintiff's claims are amenable to class treatment.

31. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and/or declaratory relief, as described below, with respect to the Class members.

**ANSWER**: The allegations in Paragraph 31 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 31 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof. Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 31 and expressly denies that Plaintiff's claims are amenable to class treatment.

32. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**ANSWER**: The allegations in Paragraph 32 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 32 and expressly denies that Plaintiff's claims are amenable to class treatment.

## CLAIMS ALLEGED

## COUNT I

### VIOLATION OF OHIO REVISED CODE § 1332.32

33.     Plaintiff repeats, realleges, and incorporates by reference Paragraphs 1-32, as if fully set forth herein.

**ANSWER**:     Netflix incorporates its answers to Paragraphs 1 through 32 as and for its answer to the allegations in Paragraph 33.

34.     Defendants provide video service, and are video service providers, in Maple Heights and each municipality comprising the Class. *See* O.R.C. § 1332.21(M). Defendants derive gross revenues from providing these video services.

**ANSWER**:     The allegations in Paragraph 34 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof.  Netflix affirmatively states that it is a producer and distributor of on-demand video content but that it is not an Internet service provider or a cable service provider and does not own or operate any network, infrastructure, or wireline facilities in the public right-of-way.  Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 34.

35.     Defendants are thus required, by statute, to pay each municipality in which they provide video service, a video service provider fee of up to 5% of their gross revenues derived from their operations in that municipality. *See* O.R.C. § 1332.32. Failure to receive the required authorization from the Ohio director of commerce does not excuse Defendants' obligation to make these payments.

**ANSWER**:     The allegations in Paragraph 35 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of

the allegations in Paragraph 35 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof.  Netflix affirmatively states that it is a producer and distributor of on-demand video content but that it is not an Internet service provider or a cable service provider and does not own or operate any network, infrastructure, or wireline facilities in the public right-of-way.  To the extent that a response is required, Netflix denies any and all allegations and/or legal conclusions contained in Paragraph 35.

36.      Defendants have failed to comply with § 1332.32 because they have failed to pay Plaintiff and the other Class members up to 5% of gross revenues, as required.

**ANSWER**:      The allegations in Paragraph 36 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 36 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof.  Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 36.

37.      Plaintiff and the other Class members are, therefore, entitled to damages as a result of Defendants' violations of O.R.C § 1332.32, along with pre- and post-judgment interest, in an amount to be determined at trial.

**ANSWER**:      The allegations in Paragraph 37 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 37 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof.  Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 37.

## COUNT II

### DECLARATORY JUDGMENT ACT

38.     Plaintiff repeats, realleges, and incorporates by reference Paragraphs 1-32, as if fully set forth herein.

**ANSWER**:     Netflix incorporates its answers to Paragraphs 1 through 32 as and for its

answer to the allegations in Paragraph 38.

39.     This case involves an actual controversy of sufficient immediacy, which is substantial and concrete, touches upon the legal relations of parties with adverse interests, and is subject to specific relief through a decree of conclusive character.

**ANSWER**:     The allegations in Paragraph 39 state legal conclusions to which no

response is required, but to the extent a response is required, Netflix denies those allegations.

Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph

39.

40.     Pursuant to 28 U.S.C. §§ 2201-2202, Plaintiff seeks a declaration, and resulting order, from the Court that:

a.  Each Defendant provides "video service," as that term is defined in the Ohio Revised Code. *See* O.R.C. § 1332.32(J);

b.  Each Defendant is a "video service provider," as that term is defined in the Ohio Revised Code. *See* O.R.C. § 1332.32(M);

c.  Defendants provide video service, and are video service providers, in Maple Heights and each municipality in the Class. *See* O.R.C. § 1332.32(J)-(M);

d.  Defendants were required to receive authorization from the Ohio director of commerce and provide ten days' advance, written notice to Plaintiff and other Ohio municipalities of such service. *See* O.R.C. § 1332.23(A), O.R.C. § 1332.24(A)(1), and O.R.C. § 1332.27(A)

e.  Defendants are required to pay Plaintiff and each of the other Class members a video service provider fee of up to 5% of their gross revenues derived from their operations in each such municipality, pursuant to O.R.C. § 1332.32; and

f.  Defendants have failed to comply with O.R.C. § 1332.32, because they

have each failed to pay to Plaintiff and each of the other Class members the required fee of up to 5% of gross revenues.

**ANSWER**:     The allegations in Paragraph 40 state legal conclusions to which no response is required, but to the extent a response is required, Netflix denies those allegations. Netflix is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 40 that relate to Hulu and on that basis, denies those allegations and demands strict proof thereof.  Netflix affirmatively states that it is a producer and distributor of on-demand video content but that it is not an Internet service provider or a cable service provider and does not own or operate any network, infrastructure, or wireline facilities in the public right-of-way.  Netflix denies any and all remaining allegations and/or legal conclusions contained in Paragraph 40.

<u>**REQUEST FOR RELIEF**</u>

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

a.     Enter an Order certifying the above-defined Class and designating Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

b.     Award all monetary relief to which Plaintiff and the other Class members are entitled, including as set forth in Count I above;

c.     Grant declaratory relief as set forth in Count II above, including ordering Defendants to cure their noncompliance with O.R.C. § 1332.32;

d.     Award pre- and post-judgment interest;

e.     Award reasonable attorneys' fees and costs to Plaintiff's counsel; and

f.     Grant such further and other relief as this Court deems appropriate.

**ANSWER**:     Netflix denies that Plaintiff and the putative class are entitled to any relief whatsoever, including but not limited to the relief requested in Plaintiff's Complaint.  Netflix expressly denies that class certification is appropriate and further denies that Plaintiff's claims

21

are appropriate for class treatment.  Netflix denies any and all remaining allegations in the Paragraph entitled "Request For Relief."

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all causes of action so triable.

**ANSWER**:     To the extent that an answer may be required to the Jury Demand in Plaintiff's Complaint, Netflix denies each and every allegation therein.

## AFFIRMATIVE DEFENSES

Netflix's affirmative defenses to Plaintiff's Complaint are set forth below.  By setting forth the following defenses, however, Netflix does not assume the burden of proof on matters and issues other than those on which Netflix bears the burden of proof as a matter of law. Moreover, nothing stated herein is intended or shall be construed as an acknowledgment that any particular issue or subject matter is relevant to Plaintiff's allegations.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state any claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or one or more members of the proposed class are barred, in whole or in part, to the extent that Plaintiff and/or one or more members of the proposed class did not suffer any legally cognizable injury under applicable law.

## THIRD AFFIRMATIVE DEFENSE

The claims in Plaintiff's Complaint are not properly maintained as a class action, because, inter alia, Plaintiff is not an adequate representative, Plaintiff's claims are not common or typical of claims of members of the proposed class, the claims of Plaintiff and members of the proposed class are subject to unique facts and defenses, common questions of law and fact do not predominate over any common issues, class treatment is not superior to other available methods

of determining the controversy, and a class action would be unmanageable.  Moreover, certification of the proposed class would result in the denial of due process to Netflix as well as members of the proposed class.

### FOURTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or one or more members of the proposed class are time-barred under the applicable statutes of limitations or statutes of repose.

### FIFTH AFFIRMATIVE DEFENSE

If Plaintiff and/or persons claiming to be members of the proposed class have delayed in bringing their claims, they may be barred from recovery, in whole or in part, by the doctrines of estoppel, waiver, or laches.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff and its counsel have failed to join as parties to this action all persons and entities who would be necessary and/or indispensable parties for the adjudication of the claims of Plaintiff and/or members of the proposed class.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint and the causes of action alleged therein are barred to the extent that Plaintiff and/or members of the proposed class lack standing.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint and the causes of action alleged therein are barred to the extent that Plaintiff and/or members of the proposed class failed to exhaust administrative remedies.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint and the causes of action alleged therein are barred by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or one or more members of the proposed class are barred, in whole or in part, by the doctrine of primary jurisdiction.  Ohio law vests in the Director of Commerce the exclusive discretionary authority to decide whether to issue a video service authorization and whether to take enforcement action for any failure to do so.  Plaintiff's claims invade that discretionary authority.

## ELEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or one or more members of the proposed class are barred in whole or in part, because Plaintiff's application of the video service provider fee to Netflix is preempted by the Internet Tax Freedom Act's prohibition against discriminatory taxation of electronic commerce, 47 U.S.C. § 151 note § 1101(2), and the Communications Act's prohibition on local governments applying franchise fees only to cable operators and providers of cable services.  47 U.S.C. §§ 541, 542, 556(c).

## TWELFTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or one or more members of the proposed class are barred in whole or in part, because Plaintiff's application of the video service provider fee to Netflix violates the First Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment.

## THIRTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or one or more members of the proposed class are barred in whole or in part, because the application of the video service provider fee on Netflix violates the Dormant Commerce Clause of the United States Constitution.

## FOURTEENTH AFFIRMATIVE DEFENSE

Netflix has insufficient knowledge or information upon which to form a belief as to whether it may have additional affirmative defenses that govern the claims asserted by Plaintiff and on behalf of the entities claimed to be members of the proposed class.  Netflix, therefore, reserves the right to raise additional defenses as appropriate.

WHEREFORE, Netflix prays:

(a)     That the Complaint be dismissed with prejudice and judgment be entered in favor of Netflix;

(b)     That Plaintiff and all members of the proposed class take nothing by reason of this suit;

(c)     For attorneys' fees and costs;

(d)     That the certification of the proposed class herein be denied; and

(e)     For any other and further relief as the Court deems just and proper.

* * * * * * *

## NETFLIX'S COUNTERCLAIM

Under Federal Rule of Civil Procedure 13, Defendant/Counterclaim Plaintiff Netflix, by and through its undersigned attorneys, hereby asserts the following counterclaim against Plaintiff/Counterclaim Defendant Maple Heights.

## PARTIES

1.     Netflix is a Delaware corporation headquartered in Los Gatos, California.

2.     Maple Heights alleges in this action that it is a lawfully existing Ohio municipal corporation located in Cuyahoga County, Ohio entitled to fees from Netflix under Ohio Rev. Code § 1332.32 *et seq*.

3.     Maple Heights purports to bring this action on behalf of all similarly-situated municipalities in Ohio.  If this class is certified, Netflix reserves the right to amend this pleading to allege the Counterclaim against other members of the purported class.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over Maple Heights because Maple Heights is located in the state of Ohio.  Further, Maple Heights commenced and continues to maintain this action in this judicial district.

5.     This Court has subject matter jurisdiction over this counterclaim under 28 U.S.C. § 1331 because it arises under federal law, including 42 U.S.C. § 1983, the Communications Act of 1934, as amended ("Communications Act"), the Internet Tax Freedom Act, and the Supremacy and Commerce Clauses of, and First Amendment to, the United States Constitution. This Court has equitable jurisdiction to enjoin unconstitutional action.  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).  In addition, the counterclaim arises out of the same nucleus of operative facts as the claims Maple Heights commenced and continues to maintain in this judicial district.

6.     Venue is proper in this Court under 28 U.S.C. § 1391.

## INTRODUCTION

7.     This action by Maple Heights seeks for the first time to apply Ohio's franchise provisions that permit the taxation of cable operators that place wires and cables under streets and on poles in public rights-of-way, to also include video ***content*** providers like Hulu and Netflix that do not.  By doing so, Maple Heights is not only twisting Ohio law in ways that were not only never contemplated, but that are also plainly unconstitutional under the First Amendment, Supremacy Clause, and Dormant Commerce Clause.

26

8.      As the Supreme Court has repeatedly held, the First Amendment broadly protects all forms of expression—be it political, educational, inspirational or simply entertaining.  While the "Free Speech Clause exists principally to protect discourse on public matters," the Supreme Court has "long recognized that it is difficult to distinguish politics from entertainment, and dangerous to try."  *Brown v. Entertainment Merchants Assoc.*, 564 U.S. 786, 790 (2011).  This right extends not only to the right to speak, but the right to watch and hear, and the right to distribute.

9.      Maple Heights is targeting the distribution of video content—such as *When They See Us*, *The Social Dilemma*, and *The Crown*—that is clearly protected by the First Amendment. Maple Heights claims that Netflix is not permitted to distribute such programs to anyone in Ohio without first obtaining permission from the state—permission that the Ohio Director of Commerce "may," but is not required, to provide.  Maple Heights seeks to impose a "fee" on such distribution, which not only burdens the distribution of First Amendment works, but burdens its affordability to residents who want to access them.  And, while Maple Heights has not yet publicly taken such a position, it presumably also seeks to compel speech by requiring Netflix to carry public, educational, and governmental channels.[6]

10.      Such licensing, taxation, and compulsion have always been limited to companies that need permission to use public rights-of-way as part of their business operations.  Those companies are required to seek authorization not because they needed permission to speak, but because they needed access to public property.  Compensation was a "tax" not on expression, but for that access.  And carriage requirements were not the result of any governmental audacity to

---

[6] "**A video service provider shall accept PEG channel content and programming** under this section that, at the least, meets the transmission standards of the national television standards committee in effect on the effective date of this section." Ohio Rev. Code § 1332.30(D) (emphasis added).

dictate speech, but was a benefit the government extracted in return for giving permission to use public rights-of-way to construct and operate wireline and cable facilities.

11.     Maple Heights's decision to target Netflix, even though Netflix does not construct or operate any system on public rights-of-way, creates a host of First Amendment problems.  It not only purports to require state authorization before Netflix is permitted to speak in the state, but imposes an ad hoc taxation regime that discriminates based on the speaker and the type of speech.  Maple Heights has singled out Hulu and Netflix for this treatment.  The result is a licensing, taxation, and compulsion scheme that clearly violates the Constitution.

12.     Maple Heights's unprecedented and discriminatory action also violates the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, as it conflicts with, and is preempted by, the Communications Act and Federal Communications Commission ("FCC") determinations implementing that Act, as well as the Internet Tax Freedom Act.

13.     Maple Heights's action also violates the Dormant Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3, by imposing burdensome requirements on inherently interstate services, far in excess of any putative local benefits.

14.     Netflix willingly pays all properly assessed state and municipal taxes and fees. But Maple Heights demands a fee that does not apply to Netflix, and that violates the Constitution.  Netflix therefore seeks to enjoin this unconstitutional action by Maple Heights.

## FACTUAL ALLEGATIONS

15.     Netflix is a producer and distributor of on-demand video content.  Netflix offers its subscribers, including subscribers in Maple Heights, online streaming access to a library of documentaries, feature films, and television series across a variety of genres and languages to viewers via the public Internet.  Netflix does not provide live programming, such as sports, news,

and award shows, nor does it provide "linear programming" by offering content on any set schedule.  Rather, Netflix subscribers can watch as much as they want, anytime, anywhere, on any Internet-connected screen, all without commercials.  As of 2019, Netflix had more than 167 million paid streaming subscribers in more than 190 countries.

16.     Ohio law provides that "no person shall provide video service in this state . . . except pursuant to a video service authorization issued under section 1332.24 of the Revised Code."  Ohio Rev. Code § 1332.23(A).  "Video service" means "the provision of video programming over wires or cables located at least in part in public rights-of-way."  Ohio Rev. Code § 1332.21(J).  A "person granted a video service authorization" is required to pay a fee (up to 5% of gross revenues) to "each municipal corporation and each township in which it offers video service."  *Id.* §§ 1332.21(M); 1332.32(A).  This fee in turn can be passed on to resident subscribers.  *Id.* § 1332.32(D).

17.     A person operating pursuant to a video service authorization under Ohio law is subject to various obligations.  *See, e.g.*, *id.* § 1332.31 (obligation to carry "national, state, and local emergency interrupt service announcements").  Among other things, such video service providers are required to provide local public, educational, or governmental programming content.  *See id.* § 1332.30(A).

18.     Netflix has never sought authorization from the Director of Commerce.  Netflix has never paid "video service provider fees" to Ohio municipalities.  Netflix has also never collected "video service provider fees" from the residents of Maple Heights.

19.     The Ohio Director of Commerce has never alleged that Netflix was required to receive video service authorization, has never contacted Netflix about auditing Netflix's services

to determine whether Netflix should receive video service authorization, and has never initiated administrative proceedings or imposed a civil penalty on Netflix as a result.

20.     Before this action, no Ohio municipality has ever contended that Netflix owed "video service provider fees" or was subject to Ohio's video service authorization statutory scheme.

21.     Maple Heights now contends that Netflix was required to obtain an "authorization" from the Ohio Director of Commerce before it provided on-demand video content over the public Internet to anyone in Ohio, is subject to the video service authorization statutory scheme, and should be required to pay fees (5% of gross revenues)—which presumably it expects Netflix to collect from its residents.

22.     Maple Heights justifies its "fee" by alleging that Netflix provides video programming similar to the video programming provided by traditional over-the-air broadcasters.  Netflix does not.  But even if it did, Maple Heights does not impose the same fee on those broadcasters.

23.     Indeed, video services provided via wireless commercial mobile service providers are expressly exempt from any fee.  *See* Ohio Rev. Code § 1332.21(J).  Video providers that distribute content solely over mobile broadband connections are thus given preferential treatment over Netflix, which distributes content over fixed and mobile connections, even though these speakers are similarly situated in that neither provides any facilities in the public rights-of-way. *See also* Final Analysis, Ohio Legislative Service Commission, *Am. Sub. S.B. 117* at 6 (Sept. 24, 2007) (analyzing Ohio Act enacting video service authorization laws and concluding that the act "excludes satellite service, because that service does not use wires or cables for transmission") (citing Ohio Rev. Code § 1332.21(J)).

24.     Maple Heights's attempt to collect taxes from Netflix under a statutory scheme that does not apply to broadcasters or mobile service providers or satellite service providers plainly discriminates against Netflix as a speaker and based on the nature of its speech, for which Maple Heights provides no justification.

25.     Maple Heights's attempt to collect taxes from Netflix, while it has not attempted to do so for others who distribute video content to its residents, is also discriminatory, for which Maple Heights provides no justification.  Any leeway ordinarily given to government officials has no role when applied to First Amendment activity, which does not tolerate *ad hoc* decisions.

26.     Maple Heights's attempt to impose such fees on Netflix also conflicts with the Communications Act, FCC Orders, and the Internet Tax Freedom Act, and therefore violates the Supremacy Clause.

27.     Maple Heights's attempt to collect these taxes from Netflix impermissibly exceeds the authority that federal law provides state and local governments to impose franchise fees.  *See* 47 U.S.C. §§ 541, 542, 556(c).

28.     Ohio law provides that a "video service authorization shall constitute a franchise" under the Communications Act.  Ohio Rev. Code § 1332.24(A)(2).  But the Communications Act's franchise provisions permit state and local governments to impose fees *only* on cable operators and services.  *See, e.g.*, 47 U.S.C. §§ 542(g) (defining "franchise fee" as limited to "cable operator[s]"); 541(a)(2) (awarding a franchise "authorize[s] the construction of a cable system").  In the Telecommunications Act of 1996, Congress eliminated any ambiguity as to the limitations on local franchise fee authority, amending 47 U.S.C. § 542(b) to clarify that such revenues could be included only if they came from "the operation of the cable system ***to provide cable services***."  Pub. L. 104-104, § 303(b), 110 Stat. 56, 125 (emphasis added).

29.  State and local attempts to impose franchise fees (or "video service provider" fees) on on-demand content providers like Netflix violate the Communications Act and binding FCC Orders, which preempt "[l]ocal regulations that **attempt to regulate any non-cable services offered by video providers**."  Report and Order, *In the Matter of Implementation of Section 621(a)(1) of the Cable Commc'ns Policy Act of 1984 As Amended by the Cable Television Consumer Prot. & Competition Act of 1992*, 22 FCC Rcd. 5101, ¶ 122 (2007) (emphasis added).

30.  Maple Heights's attempt to impose the fees at issue also violates the Internet Tax Freedom Act.  47 U.S.C. § 151 (note), § 1101(a)(2) (the "ITFA").

31.  The ITFA prohibits states and municipalities from enacting certain taxes on "electronic commerce," which includes the delivery of services over the Internet or through Internet access, whether or not for consideration.  47 U.S.C. § 151 (note), § 1105(3).

32.  Netflix is protected by the ITFA, as it provides online video content to subscribers using third-party Internet service providers' Internet access service.

33.  The franchise "fees" imposed by the Ohio Act are taxes under the ITFA, as they are not imposed or collected by any regulatory agency, but are instead imposed by an act of the state legislature and collected by municipalities for their general purposes.  *See Chattanooga Gas Co. v. City of Chattanooga*, No. 1:04-cv-00214, 2007 WL 1387505, *9 (E.D. Tenn. May 7, 2007) (citing *Hedgepeth v. Tennessee*, 215 F.3d 608, 612 (6th Cir. 2000)).  Netflix, which does not operate any facilities in the public rights-of-way, would not receive any privilege, service, or benefit from the tax.  *See id.*

34.  The tax also violates the ITFA's prohibition on "discriminatory taxes" because it discriminates based on how the video content was delivered without justification, as discussed. 47 U.S.C. § 151 (note), § 1105(2)(A).

35.     Maple Heights's action also violates the Dormant Commerce Clause, because the tax at issue imposes excessive burdens on interstate commerce that outweigh any purported local benefit.

36.     Under the Dormant Commerce Clause, a state may not "discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc., v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93, 98 (1994).  Courts have long recognized that the Commerce Clause prevents states from "imped[ing] . . . the free flow of commerce" where there exists a "need of national uniformity." *S. Pac. Co. v. State of Ariz ex rel. Sullivan*, 325 U.S. 761, 767 (1945).  These principles apply with greater force to Internet activities like streaming, as courts have recognized that "'it is difficult, if not impossible, for a state to regulate Internet activities without projecting its legislation into other States.'" *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1024 (E.D. Cal. 2017) (quoting *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003)).

37.     The Dormant Commerce Clause does not tolerate burdens on interstate commerce where, as here, such burdens are "excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  In the context of the Internet, compliance with a patchwork of inconsistent state laws is inherently burdensome.  Because Netflix does not operate any facilities in the public rights-of-way, the justification for imposing a tax under Ohio law is absent.  Maple Heights did not, and cannot, identify any specific local benefit its action will provide.

38.     Each of these constitutional violations independently requires enjoining Maple Heights's action.

## CLAIMS FOR RELIEF

39.     Netflix incorporates by reference the preceding paragraphs 1 through 38 as if set forth here in their entirety.

40.     Section 1983 of Title 42 of the United States Code provides that "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law [or] suit in equity." The Supreme Court has long held that courts have equitable jurisdiction to enjoin unconstitutional action.  *Armstrong*, 575 U.S. at 327.

41.     Maple Heights is a person within the meaning of Section 1983 without any qualified or absolute immunity in this instance.

42.     Maple Heights acts under color of state law, particularly as it seeks to collect video service authorization taxes under Ohio Rev. Code §§ 1332.21-1332.34.

## FIRST CLAIM FOR RELIEF

### *Maple Heights's Action Violates the First Amendment*

43.     Netflix incorporates by reference the preceding paragraphs 1 through 42 as if set forth here in their entirety.

44.     Netflix's distribution of on-demand video content over the public Internet to the residents of Maple Heights is protected under the First Amendment of the United States Constitution.

45.     Maple Heights' actions against Netflix violate the First Amendment, including without limitation:  (a) imposing a standard-less licensing requirement before Netflix can speak to the residents of Maple Heights; (b) imposing a tax that discriminates based on the nature of

the video content at issue; (c) imposing a tax that discriminates based on the identity of the speaker; (d) subjecting Netflix to various requirements—*e.g.*, providing PEG content and programming—that constitute unconstitutionally compelled speech; and (e) singling out Hulu and Netflix (and their subscribers) for this unfair treatment.

46.     If the tax is imposed against Netflix, as Maple Heights asks this Court to do, Netflix will be harmed in the form of actual damages by paying an unconstitutional tax for the services it provides.  The threat of this harm is concrete, imminent, and certainly impending since Maple Heights has already taken adverse actions against Netflix in the form of this action.

### SECOND CLAIM FOR RELIEF

***Maple Heights's Action Violates, and Is Preempted by, the Communications Act and Binding FCC Determinations***

47.     Netflix incorporates by reference the preceding paragraphs 1 through 46 as if set forth here in their entirety.

48.     Maple Heights' actions conflict with the Communications Act and long-standing FCC determinations and therefore violate the Supremacy Clause, including without limitation, imposing franchise fees on Netflix in violation of federal law limiting application of franchise fees to video providers that deliver video programming via their own facilities deployed in the public rights-of-way (namely, cable operators).

### THIRD CLAIM FOR RELIEF

***Maple Heights's Action Violates, and Is Preempted by, the Internet Tax Freedom Act***

49.     Netflix incorporates by reference the preceding paragraphs 1 through 48 as if set forth here in their entirety.

50.     Maple Heights's Action directly conflicts with the ITFA and therefore violates the Supremacy Clause, including without limitation, by imposing a discriminatory tax on electronic commerce.

## FOURTH CLAIM FOR RELIEF

### *Maple Heights's Action Violates the Dormant Commerce Clause*

51.     Netflix incorporates by reference the preceding paragraphs 1 through 50 as if set forth here in their entirety.

52.     Maple Heights's action violates the Commerce Clause of the United States Constitution, Art. I, § 8, cl. 3, including without limitation, by imposing excessive burdens on interstate commerce that far outweigh any purported local benefit.

## PRAYER FOR RELIEF

WHEREFORE, Netflix respectfully requests the Court enter judgment in its favor and against Maple Heights as follows:

(a)     Dismissing all claims against Netflix in Maple Height's Complaint with prejudice;

(b)     Declaring that the state video service authorization provisions do not apply to Netflix's distribution of online video content over the public Internet to the residents of Maple Heights;

(c)     Permanently enjoining Maple Heights from attempting to collect video service authorization taxes from Netflix;

(d)     Awarding reasonable attorneys' fees under 42 U.S.C. § 1988; and

(e)     Granting Netflix any further relief as this Court may deem just, proper or equitable.

Dated:  October 19, 2020                    Respectfully submitted,


                                           */s/ Amanda Martinsek*
                                           Amanda Martinsek (0058567)
                                           Gregory C. Djordjevic (0095943)
                                           ULMER & BERNE LLP
                                           1660 West 2nd Street, Suite 1100
                                           Cleveland, Ohio 44113-1448
                                           Tel.: 216-583-7000 / Fax: 216-583-7001
                                           Email: amartinsek@ulmer.com
                                           Email: gdjordjevic@ulmer.com

                                           Jean A. Pawlow (*pro hac vice*)
                                           LATHAM & WATKINS LLP
                                           555 Eleventh Street, NW, Suite 1000
                                           Washington, D.C. 20004-1304
                                           Tel.: 202-637-2200/Fax: 202-637-2201
                                           Email: jean.pawlow@lw.com

                                           Mary Rose Alexander (*pro hac vice*)
                                           Robert C. Collins III (*pro hac vice*)
                                           LATHAM & WATKINS LLP
                                           330 North Wabash Ave., Suite 2800
                                           Chicago, IL 60611
                                           Tel.: 312-876-7700/Fax: 312-993-9767
                                           Email: mary.rose.alexander@lw.com
                                           Email: robert.collins@lw.com


                                           *Counsel for Defendant Netflix, Inc*.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 19, 2020, a copy of the foregoing was filed

electronically and sent to all counsel of record by operation of the Court's CM/ECF System.


*/s/ Amanda Martinsek*
*Counsel for Defendant Netflix, Inc.*