**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| CITY OF MAPLE HEIGHTS, OHIO, individually and on behalf of all others similarly situated, | Case No. 1:20-CV-01872 |
| Plaintiff, | Hon. James S. Gwin |
| v. | Magistrate Judge Thomas M. Parker |
| NETFLIX, INC., and HULU, LLC, | |
| Defendants. | |

**PLAINTIFF CITY OF MAPLE HEIGHTS, OHIO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**

**Dated:**  April 19, 2020

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    STATEMENT OF ISSUES .................................................................................... 2

III.   FACTUAL BACKGROUND ................................................................................. 2

    A. Defendants Use the Infrastructure of Internet-Service Providers Located in Public Rights-of-Way to Deliver Video Programming to Their Subscribers............................... 2

    B. Defendants Provide "Video Service" Under the Act. ......................................... 3

    C. As Video Service Providers, Defendants Are Required to Pay All Class Members a Video Service Provider Fee, Which Is Calculated in the Same Manner for All. ............. 4

IV.   LEGAL STANDARD .......................................................................................... 5

V.    ARGUMENT ....................................................................................................... 6

    A. The Proposed Class is Definite and Ascertainable.......................................... 6

    B. The Proposed Class Satisfies the Requirements of Rule 23(a). ..................... 7

        1. The Proposed Class is Sufficiently Numerous. ........................................... 7

        2. There are Questions of Law and Fact Common to the Proposed Class.................. 8

        3. Plaintiff's Claims are Typical of the Other Class Members' Claims ...................... 10

        4. Plaintiff and Its Counsel will Adequately Represent the Proposed Class............... 11

    C. The Proposed Class Satisfies Rule 23(b)(2). .................................................. 13

    D. The Proposed Class Also Satisfies Rule 23(b)(3)............................................ 17

        1. Common Issues Predominate. ...................................................................... 17

        2. A Class Action is the Superior Procedure for Managing this Case........................ 20

VI.   CONCLUSION .................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. Citgo Petroleum Corp.*,
151 F.3d 402 (5th Cir. 1998) ..........................................................................16, 17

*Amara v. CIGNA Corp.*,
775 F.3d 510 (2d Cir. 2014)......................................................................15, 16, 17

*In re American Medical Systems, Inc.*,
75 F.3d 1069 (6th Cir. 1996) ...................................................................................8

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)......................................................................................1, 6, 8, 18

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2014) .................................................................................15

*Carter v. Arkema, Inc.*,
No. 3:13-cv-1241, 2018 WL 1613787 (W.D. Ky. Apr. 3, 2018) ....................15, 16

*Chapman v. Tristar Products, Inc.*,
2017 WL 2643596 (N.D. Ohio June 20, 2017) (Gwin, J.) .................................7, 19

*Clemons v. Norton Healthcare Inc.*,
890 F.3d 254 (6th Cir. 2012) .................................................................................17

*Coleman v. General Motors Acceptance Corp.*,
296 F.3d 443 (6th Cir. 2002) ...................................................................................6

*Comcast v. Behrend*,
569 U.S. 27 (2013)..................................................................................................20

*Faralli v. Hair Today, Gone Tomorrow*,
No. 1:06CV504, 2007 WL 120664 (N.D. Ohio Jan. 10, 2007) ...............................7

*Gooch v. Life Investors Ins. Co. of Am.*,
672 F.3d 402 (6th Cir. 2012) ...........................................................................14, 16

*Hicks v. State Farm Fire & Cas. Co.*,
965 F.3d 452 (6th Cir. 2020) ...................................................................................6

*Humphrey v. Stored Value Cards*,
No. 1:18-CV-1050, 2018 WL 6011052 (N.D. Ohio Nov. 16, 2018) (Gwin, J.).....................19

ii

*J.B-K-1 v. Meier*, No. 3:18-cv-0025, 2020 WL 1227761
(E.D. Ky. Mar. 13, 2020) ........................................................................15

*Johnson v. Meriter Health Services Employee Retirement Plan*,
702 F.3d 364 (7th Cir. 2012) ...........................................................15, 17

*Lowery v. Circuit City Stores, Inc.*,
158 F.3d 742 (4th Cir. 1998) ..................................................................14

*Martin v. Behr Dayton Thermal Products LLC*,
896 F.3d 405 (6th Cir. 2018) ..................................................................20

*Phillips v. Philip Morris Companies Inc.*,
298 F.R.D. 355 (N.D. Ohio 2014) .............................................................8

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ................................................................14

*In re Scrap Metal Antitrust Litig.*,
No. 1:02CV0844, 2004 WL 7340436 (N.D. Ohio Mar. 31, 2004)...................11, 20

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
130 S. Ct. 1431 (2010)............................................................................21

*Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*,
279 F.R.D. 442 (N.D. Ohio 2012) ...........................................................19

*In re Sonic Corp. Customer Data Breach Litig.*,
No. 1:17-md-02807-JSG, 2020 WL 6701992 (N.D. Ohio Nov. 13, 2020) ...............10, 11, 19

*Stanich v. Travelers Indem. Co.*,
259 F.R.D. 294 (N.D. Ohio 2009) ...........................................................10

*Steigerwald v. Commissioner of Social Security*,
326 F.R.D. 469 (N.D. Ohio 2018) ..................................................10, 12, 19, 20

*Taylor v. CSX Transp., Inc.*,
264 F.R.D. 281 (N.D. Ohio, 2007) .............................................................8

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016)............................................................................18

*Wal-Mart Stores, Inc. v. Dukes, et al.*,
564 U.S. 338 (2011)...................................................................... *passim*

*In re Whirlpool Corp. Front-Loading Washer Prod. Liability Litig.*,
722 F.3d 838 (6th Cir. 2013) ...............................................................9, 18

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ...................................................................................5

**Statutes**

47 U.S.C. § 522(20) ..........................................................................................................3

O.R.C. § 1332.21(I) ..................................................................................................1, 3, 11

O.R.C. § 1332.21(J) ..........................................................................................1, 3, 4, 9, 11

O.R.C. § 1332.21(M) .........................................................................................................9

O.R.C. § 1332.32 .................................................................................................9, 11, 15, 16

O.R.C. § 1332.32(A) .....................................................................................4, 5, 11, 17

O.R.C. § 1332.32(B) .......................................................................................................5, 11

O.R.C. § 1332.32(B)(1) ....................................................................................................5

O.R.C. §§ 1332.32(C) .......................................................................................................5

O.R.C. § 1332.32(C)(1)(a) ................................................................................................4

O.R.C. § 1332.32(C)(1)(b) ................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 1 ...............................................................................................................21

Fed. R. Civ. P. 23 ...................................................................................................5, 6, 7, 21

Fed. R. Civ. P. 23(a) ........................................................................................................6, 7

Fed. R. Civ. P. 23(a)(1) .....................................................................................................8

Fed. R. Civ. P. 23(a)(2) ...................................................................................................8, 10

Fed. R. Civ. P. 23(a)(3) ................................................................................................... 10-11

Fed. R. Civ. P. 23(a)(4) ................................................................................................... 12-13

Fed. R. Civ. P. 23(b) ........................................................................................................6, 18

Fed. R. Civ. P. 23(b)(2) ................................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3) ................................................................................................... *passim*

Fed. R. Civ. P. 23(g) ........................................................................................................13

Fed. R. Civ. P. 23(g)(1)(A) ................................................................................................12

Fed. R. Civ. P. 23(c)(1)(A) ..................................................................................................6

Plaintiff, the City of Maple Heights, Ohio ("Maple Heights" or "Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined herein), by its undersigned counsel and pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, submits this Memorandum of Law in Support of its Motion for Class Certification and Appointment of Class Representative and Class Counsel.

## I.    INTRODUCTION

Maple Heights moves for certification of the proposed Class because the issues in this case arise from the uniform application of Ohio Revised Code §§ 1332.21, *et seq.* (the "Act"), which applies equally to all proposed Class members. The central question that is dispositive for all proposed Class members is whether Defendants Netflix, Inc. ("Netflix") and Hulu, LLC ("Hulu") (collectively, "Defendants") are "video service providers" under the Act. The answer is also the same for all proposed Class members:  Defendants are video service providers because they provide video programming comparable to programming provided by television broadcast stations over wires or cables located at least in part in public rights-of-way. *See* O.R.C. §§ 1332.21(I)-(J). Every member of the proposed Class is a municipality or township located in the State of Ohio in which Defendants provide video service. As such, pursuant to the Act, Defendants owe each of the proposed Class members video service provider fees, which are uniformly calculated by multiplying gross revenue (as specifically defined by the Act)—derived from subscribers with service addresses located within the geographic area of the proposed Class members—by a specified percentage, up to 5%.

At this early stage of the litigation, the Court need "not [] adjudicate the case; rather, [the Court must] select the method best suited to adjudication of the controversy fairly and efficiently."

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013).[1] Proceeding as a class action will undoubtedly provide the most efficient and fair method of adjudication. Indeed, this case is tailor-made for class certification and class adjudication. It would be inefficient and a waste of judicial resources to require municipalities to individually file lawsuits, seeking the same relief, based on the same facts. The answers to the common questions regarding Defendants' liability and the method for calculating damages will be the same for all proposed Class members. *See Wal-Mart Stores, Inc. v. Dukes, et al.*, 564 U.S. 338, 350 (2011) (recognizing that a proceeding's ability to "generate common answers" is "what matters"). In addition, since Defendants have refused to— and should be ordered to—take action on grounds that apply to every Class member, declaratory and injunctive relief is appropriate for the class as a whole. *Dukes*, 564 at 360 ("Rule 23(b)(2) allows class treatment when . . . final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."). Accordingly, Plaintiffs' motion for class certification and appointment of Class Representatives and Class Counsel should be granted.

## II.     STATEMENT OF ISSUES

1. Whether the proposed Class should be certified under Federal Rule of Civil Procedure 23(b)(2); and

2. Whether, in the alternative, Plaintiff's claims for monetary relief should be certified under Federal Rule of Civil Procedure 23(b)(3).

## III.     FACTUAL BACKGROUND

### A. Defendants Use the Infrastructure of Internet-Service Providers Located in Public Rights-of-Way to Deliver Video Programming to Their Subscribers.

Defendants admit that their subscribers "must use a broadband Internet connection, such

---

[1] Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

as DSL or fiber optic cable to receive their programming on an Internet-connected device, such as a computer or smart television." Netflix Answer, ECF No. 22 at ¶ 15; *see also* Hulu Answer, ECF No. 24 at ¶¶ 11, 15. Defendants use the infrastructure of Internet service providers to transmit their video programming from their servers to their subscribers. Netflix Answer, ECF No. 22 at ¶ 11; *see also* Hulu Answer, ECF No. 24 at ¶¶ 11, 15; Compl., ECF No. 1 at ¶¶ 11-15; Malfara Report at ¶¶ 21-23, 28-46 (attached as Exhibit 1). Defendants cannot reasonably dispute that the infrastructure of Internet service providers in municipalities in the State of Ohio, including Maple Heights, are located in public rights-of-way and, without the use of such infrastructure, they would be unable to deliver their video programming to their subscribers. *See* Compl., ECF No. 1 at ¶ 15; Malfara Report at ¶¶ 21-23, 28-46. Thus, without the use of wireline facilities in public-rights-of-way, Defendants would be unable to transmit video programming in municipalities in the State of Ohio, including in Maple Heights. Even if Defendants were to dispute these facts, the resolution of the dispute would be common to the Class. Malfara Report at ¶ 14.

## B.  Defendants Provide "Video Service" Under the Act.

The Act defines "video service" as the "provision of video programming over wires or cables located at least in part in the public rights-of-way, *regardless of the technology used to deliver that programming, including internet protocol technology or any other technology*." O.R.C. § 1332.21(J). "Video programming" is defined as programming "generally considered comparable to programming provided by a television broadcast station." O.R.C. § 1332.21(I); 47 U.S.C. § 522(20). Defendants provide their subscribers with programming that is comparable to that of a television broadcast station, including television shows, movies, and documentaries that

audiences are accustomed to watching on television.[2] *See* Compl., ECF No. 1 at ¶ 10; Netflix Counterclaim, ECF No. 22 at ¶ 15; Hulu Answer, ECF No. 24 at ¶ 9; Simon Report at, e.g., ¶¶ 35-64 (attached as Ex. 2). And, as set forth above, their programming is provided to their subscribers via Internet protocol technology over wires or cables located at least in part in the public rights-of-way. Netflix Answer, ECF No. 22 at ¶¶ 11, 15; *see also* Hulu Answer, ECF No. 24 at ¶¶ 11, 15. The plain language of the Act does not require a video service provider to construct or operate these wireline facilities. *See* O.R.C. § 1332.21(J).  As such, Defendants provide "video service" under the Act. And again, even if this is disputed, the resolution of the dispute would be common to the class. Simon Report at ¶ 7; Malfara Report at ¶ 14.

**C.  As Video Service Providers, Defendants Are Required to Pay All Class Members a Video Service Provider Fee, Which Is Calculated in the Same Manner for All.**

The Act requires all video service providers, like Defendants, to pay a video service provider fee to each municipality or township, including Maple Heights, in which they offer video service. O.R.C. § 1332.32(A). All video service providers are required to pay a quarterly fee of up to five percent of their gross revenues from the provision of services in the municipality. O.R.C. § 1332.32(C)(1)(a). The fee in any given municipality is calculated and enforced in the same manner for all video service providers, regardless of the content of the video programming, the identity of the provider, or the mode in which it is provided—so long as the programming is provided using wires or cables located in the public rights-of-way. O.R.C. §§ 1332.32(A)-(C).

---

[2] More specifically, both Netflix and Hulu: (1) transmit the same television programs and movies that are or were at one time broadcast by television stations; (2) to the extent they develop original programs or acquire programs not broadcast by television stations in the U.S., such programs are in genres and formats that are identical to the programs broadcast by television stations; (3) engage in the same production process as is used by television stations; and (4) complete for and win awards, such as the Emmy Awards, that are specific to the television industry. Indeed, to the viewer, Netflix's and Hulu's video programming is indistinguishable in format, genre, and quality when compared to broadcast and cable television. Simon Report at ¶¶ 35-76.

The video service provider fee is calculated quarterly by determining the video service provider's "gross revenue for the preceding calendar quarter . . . and multiplying the result by the percentage specified" by the Act. O.R.C. § 1332.32(A). Gross revenue is computed with generally accepted accounting principles and consists of specifically enumerated types of revenue that is "collected by the provider for video service from all its subscribers having service addresses within the municipal corporation or, respectively, the unincorporated area of the township." O.R.C. § 1332.32(B). The percentage of gross revenues required "shall be zero or such higher percentage, not to exceed five per cent, as is specified in an ordinance or resolution that the municipal corporation or township may enact or adopt. . . ." O.R.C. § 1332.32(C)(1)(b).

To be clear, the video service provider fee is calculated the same under the Act regardless of whether Defendants' video programming is viewed by Maple Heights residents outside the City, by non-residents inside the City, or by residents via mobile devices. The Act does not charge a fee to Defendants every time a subscriber downloads or streams their video programming. Rather, the video service provider fee is based upon gross revenue derived from the flat monthly subscriptions of subscribers with service addresses located in Maple Heights within any given quarter. O.R.C. § 1332.32(B)(1). Under the plain language of the Act, calculation of the video service provider fee is thus based solely on the service address at which subscribers are located, and not where or how they ultimately view each and every piece of programming. *See* Malfara Report at ¶¶ 39-46.

## IV.    LEGAL STANDARD

This Court has broad discretion to grant class certification. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012). When assessing whether Plaintiff has met the Rule 23 requirements, the court must conduct a "rigorous analysis." *Dukes*, 564 U.S. at 351 n. 6. Moreover, although plaintiffs are confident that they will prevail on the merits, now is not the time for the

court to dive into merits inquiries. *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013). Rather, the court may consider merits questions "only to the extent . . . that they are relevant to determining whether" plaintiffs have satisfied the Rule 23 prerequisites. *Id.* at 460. When the plaintiff's claims raise common questions of law and fact, as in this case, common adjudication is superior to individual treatment. *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020).

## V.  ARGUMENT

Federal Rule of Civil Procedure 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Even at this early stage of this litigation, Plaintiff is able to demonstrate that it meets the enumerated prerequisites of Rule 23(a) and at least one prong of Rule 23(b). *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). Rule 23(b)(2) requires that the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting only individual class members, and that a class action is "superior to other available methods of adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff meets all the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(2) and (b)(3).

### A.  The Proposed Class is Definite and Ascertainable.

Rule 23 contains an implicit threshold requirement that the members of a proposed class be "identifiable." *Faralli v. Hair Today, Gone Tomorrow*, No. 1:06CV504, 2007 WL 120664, at *4 (N.D. Ohio Jan. 10, 2007). Plaintiff seeks to certify a Rule 23(b)(2) and/or (b)(3) class

6

composed of:

> All Ohio municipalities in which one or more of the Defendants has provided video
> service (the "Class").

Compl., ECF No. 1 at ¶ 24. The proposed Class consists of at least 938 municipal governments and 1,308 township governments,[3] is objectively defined, and its members can be readily ascertained from the State of Ohio Census Bureau. *Chapman v. Tristar Products, Inc.*, 2017 WL 2643596, at *2 (N.D. Ohio June 20, 2017) (Gwin, J.) (holding an ascertainable class exists if "traditional methods and models" can be used to identify class members with reasonable accuracy). The proposed Class is "identifiable."

**B. The Proposed Class Satisfies the Requirements of Rule 23(a).**

Rule 23(a) provides the basic prerequisites that must be satisfied for class certification. Under Rule 23(a), a class action may be maintained only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

**1. The Proposed Class is Sufficiently Numerous.**

Rule 23(a)(1) mandates that a class must be "so numerous that joinder is impracticable." Fed. R. Civ. P. 23(a)(1). Courts have held that the numerosity requirement is satisfied when a class exceeds 40 members. *See Phillips v. Philip Morris Companies Inc.*, 298 F.R.D. 355, 362 (N.D. Ohio 2014); *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio, 2007). The proposed Class here totals at least 2,246 members—the number of cities and townships located in the State

---

[3] *See* Ohio Census Information, https://www2.census.gov/govs/cog/2007/oh.pdf (Oct. 2007).

of Ohio. Even if every city and township is not a member of the proposed Class, the proposed Class still satisfies the numerosity requirement. Rule 23(a)(1)'s numerosity requirement is met.

### 2. There are Questions of Law and Fact Common to the Proposed Class.

Rule 23(a)(2) requires plaintiffs seeking class certification to demonstrate that members of the proposed class share "common questions of law and fact." Fed. R. Civ. P. 23(a)(2). This requirement is construed permissively and is less stringent than the predominance requirement of Rule 23(b)(3). *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996). "[E]ven a single question" will suffice. *Dukes*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* Commonality is satisfied where the claims of all class members "depend upon a common contention . . . [such] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *see also Amgen*, 568 U.S. at 470. That is the case here, where the answers to common questions will drive the resolution of Plaintiff's and the other Class members' claims.

This case centers on Defendants' failure to comply with the requirements of the Act, which is uniformly experienced by the entirety of the proposed Class, raising common issues of fact and law. Defendants' uniform failure to pay fees under the Act is applicable to and affect every proposed Class member wherein Defendants provide video service. Factual questions that can be resolved through common information to be uncovered through discovery include, among others:

- The technology by which Defendants provide video service in the State of Ohio;

- Whether the technology used by Defendants relies on wireline facilities located at least in part in public rights-of-way;

- The nature and content of the video programming provided by Defendants;

- The number and locations of Defendants' subscribers in the State of Ohio; and

- The amount of gross revenues Defendants derive from providing video service in the State of Ohio.

The pertinent questions of law in this case are also common and point to central issues of liability and damages. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liability Litig.*, 722 F.3d 838, 854 (6th Cir. 2013). Each of the questions below can be resolved on a class-wide basis:

- Whether Defendants provide video service, as defined by O.R.C. § 1332.21(J);

- Whether Defendants are video service providers, as defined by O.R.C. § 1332.21(M);

- Whether Defendants were required to receive authorization from the Ohio Director of Commerce and provide ten days' advance, written notice to Ohio municipalities of such service;

- Whether Defendants' failure to apply for and obtain authorization and failure to provide ten days' advance, written notice to Ohio municipalities of such video service has relieved Defendants of their obligation to pay video service provider fees pursuant to O.R.C. § 1332.32;

- Whether declaratory relief is appropriate, requiring Defendants to comply with all requirements of the Act; and

- Whether Defendants are required to pay Ohio municipalities for past-due video service provider fees.

*See* Compl., ECF No. 1 ¶ 28.

The answers to each of these questions will be determinative of the outcome of this litigation for all proposed Class members. Thus, common issues in this case will be sufficiently specific and relevant to the entire Class to ensure a vigorous and full presentation of all claims for relief. *In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-md-02807-JSG, 2020 WL 6701992, at *3 (N.D. Ohio Nov. 13, 2020) (Gwin, J.). Plaintiff, therefore, satisfies Rule 23(a)(2)'s commonality requirement.

9

### 3.  Plaintiff's Claims are Typical of the Other Class Members' Claims.

Rule 23(a)(3) requires that the claims of the named Plaintiff be typical of the claims of the other class members. A plaintiff's claim is "typical" of class members' claims if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Sonic Corp. Customer Data Breach Litig.*, 2020 WL 6701992, at *3. The typicality standard is "relatively liberal" and the putative class members are not required to share identical claims; rather, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories. *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 305 (N.D. Ohio 2009). The test for typicality is "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Steigerwald v. Commissioner of Social Security*, 326 F.R.D. 469, 477 (N.D. Ohio 2018) (Gwin, J.). Plaintiff's claims easily meet this requirement.

All members of the proposed Class—including Plaintiff Maple Heights—are entitled to the same benefits provided for in the Act and have suffered the same harm. Defendants are video service providers under the Act because they provide video programming comparable to programming provided by television broadcast stations over wires or cables located at least in part in public rights-of-way. *See* O.R.C. §§ 1332.21(I)-(J). As such, they are required to pay each Ohio municipality where they provide their video services (the proposed Class members) a video service provider fee. *See* O.R.C. § 1332.32(A). Defendants, however, have uniformly refused to comply with the requirements of the Act—which applies equally to all proposed Class members. The amount of the video service provider fee due to the proposed Class members is calculated in the same manner for each of the proposed Class members. O.R.C. § 1332.32(B). Determining the

video service provider fees due to each proposed Class member is thus a "mechanical task" that is "capable of mathematical or formula calculation" and is entirely manageable. *See In re Scrap Metal Antitrust Litig.*, No. 1:02CV0844, 2004 WL 7340436, at *11 (N.D. Ohio Mar. 31, 2004); *see also In re Sonic Corp. Customer Data Breach Litig.*, 2020 WL 6701992, at *4 ("The potential need to assess individual responses for damages purposes does not negate the fact that Plaintiffs' negligence claims grow out of the same conduct, and that Plaintiffs' negligence theories could apply to any potential class member."). Calculating damages in this case will be as simple as following the express requirements of the Act, *i.e.,* multiplying the percentage specified by Defendants' gross revenues (as that term is defined by the Act) derived from subscribers with service addresses within the municipality. O.R.C. § 1332.32. Thus, Plaintiff's claims are typical of the other Class members' claims, thereby satisfying Rule 23(a)(3)'s typicality requirement.

### 4. Plaintiff and Its Counsel will Adequately Represent the Proposed Class.

Rule 23(a)(4) requires that the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of class representation is measured by two standards, the primary purpose of which is to determine whether there are conflicts between the named plaintiff and the proposed Class members. *Steigerwald*, 326 F.R.D. at 478. First, class members must not have interests that are "antagonistic to one another." *Id.* Second, class counsel must be qualified, experienced, and generally able to conduct the litigation. *Id.* In evaluating the adequacy of plaintiffs' counsel, the court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

11

Maple Heights has no conflicts of interest with absent Class members and has every interest and intention of vigorously prosecuting this case. To date, Maple Heights has actively participated in this litigation by attending Court conferences through its counsel, providing information necessary to complete initial disclosures and written discovery responses, providing documents to counsel, and providing privileged interviews with counsel about issues pertinent to the case. Declaration of Adam J. Levitt at ¶ 3. It has chosen to serve as named Plaintiff and proposed Class Representative to ensure that all members of the proposed Class receive appropriate relief. *Id.* at ¶ 4. Moreover, Maple Heights' claims rise and fall on the same questions of law relevant to the claims of other Class members. *Id.* at ¶ 5. Plaintiff seeks damages individually and on behalf of the other Class members that, although varying in amount, will be calculated in the same manner, arise from the same cause, raise the same liability questions, and will be resolved by the same answers regarding Defendants' failure to comply with the Act. *Id.* at ¶ 5. There are no conflicts of interest that exist between or among the proposed Class Representative and the other members of the proposed Class. *Id.* at ¶ 6.

Additionally, Maple Heights is represented by highly-qualified counsel with extensive experience conducting class and complex litigation, particularly in the context of franchise requirements for video service providers under various state statutes. Significantly, proposed Class Counsel here is presently litigating similar class action cases, arising under substantially similar statutes, against Defendants and on behalf of municipalities in Arkansas, California, Nevada, Tennessee, and Texas. Counsel have committed significant resources to developing the claims in this case, are committed to continuing to prosecute this action vigorously, and should be appointed to serve as Class Counsel under Rule 23(g). Fed. R. Civ. P. 23(g); *see also* Firm Resumes (attached as Exhibit 3-5). Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

12

**C.  The Proposed Class Satisfies Rule 23(b)(2).**

A declaratory and injunctive relief class can be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. 23(b)(2); *see also Dukes*, 564 U.S.  at 360 (holding that certification under Rule 23(b)(2) is appropriate "when a single injunction or declaratory judgement would provide relief to each member of the class"). As the Supreme Court has explained, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all the class members or as to none of them." *Dukes*, 131 S. Ct. at 2557.

Unlike Rule 23(b)(2), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class.  *Dukes*, 564 U.S. at 363 (stating that in Rule 23(b)(2) classes "[p]redominance and superiority are self-evident").  Additionally, questions of manageability and judicial economy are irrelevant to 23(b)(2) class actions. *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 758 (4th Cir. 1998), *overturned on other grounds* (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1105 (5th Cir. 1993)); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).  Rather, it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole.  *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) ("It is sufficient if class members complain of a pattern or practice that is generally applicable to the entire class. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate."); *see also* 2 Newberg on Class Actions § 4:26 (5th ed. 2020) ("Rule 23(b)(2) authorizes certification in situations affecting the class as a whole, when 23(b)(2) circumstances are present, unitary

13

adjudication is not only preferable, but it is also essential.").

These conditions are met here. Defendants have acted uniformly with respect to the Class, *i.e.*, Defendants have provided video service in each of the municipalities that comprise the proposed Class without obtaining the necessary authorization and paying the required video service provider fee. Maple Heights seeks declaratory and injunctive relief that is indivisible and applies to all members of the Class: Maple Heights seeks a declaration that Defendants are "video service providers" that deliver "video service" in Maple Heights and each municipality in the Class. Compl., ECF No. 1 at ¶ 40(a)–(c). Maple Heights further seeks an order declaring that Defendants were (and are) required to obtain authorization from the Ohio director of commerce and provide advance notice to the Class before providing video service. *Id.* ¶ 40(d). Maple Heights also seeks a declaration that Defendants are obligated to pay the class the video service provider fee required of video service providers under O.R.C. § 1332.32. *Id.* ¶ 40(e)–(f). And Maple Heights asks the Court to order "Defendants to cure their noncompliance with O.R.C. § 1332.32." *Id.*, Request for Relief, ¶ (c). All of this requested declaratory and injunctive relief applies on a class-wide basis and would "provide relief to each member of the class." *See Dukes*, 564 U.S. at 360. This is because Defendants' conduct can be declared unlawful only as to all of the proposed Class members or as to none of them—the answers to questions such as whether Defendants offer their subscribers "video service" and are "video service providers" do not depend on any facts unique to proposed Class members.[4] Accordingly, Maple Heights' claims for declaratory and injunctive relief are properly certified under Rule 23(b)(2).

In addition to its claims for declaratory and injunctive relief, Maple Heights' request for

---

[4] Indeed, Netflix and Hulu provide the exact same video programming, delivered in the exact same manner, no matter where their subscribers reside in the State of Ohio. Simon Report at ¶ 7; Malfara Report at ¶ 14.

monetary relief should also be certified under Rule 23(b)(2). The Court's task in evaluating a motion to certify claims for monetary relief under 23(b)(2) is to "determine . . . whether any claim for monetary relief is merely *incidental* to the claims for injunctive and declaratory relief." *Carter v. Arkema, Inc.*, No. 3:13-cv-1241, 2018 WL 1613787, at *5 (W.D. Ky. Apr. 3, 2018) (certifying claim for monetary relief under Rule 23(b)(2)); *see also J.B-K-1 v. Meier*, No. 3:18-cv-0025, 2020 WL 1227761, at *9 (E.D. Ky. Mar. 13, 2020) (same); *Amara v. CIGNA Corp.*, 775 F.3d 510, 519–20 (2d Cir. 2014) (finding *Dukes* "does not foreclose an award of monetary relief when that relief is incidental to a final injunctive or declaratory remedy."); *Berry v. Schulman*, 807 F.3d 600, 609 (4th Cir. 2014) ("[W]here monetary relief is 'incidental' to injunctive or declaratory relief, Rule 23(b)(2) certification may be permissible."); *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364, 372 (7th Cir. 2012) (*Dukes* "left intact the authority to provide purely incidental monetary relief in a (b)(2) class action[.]"); *Gooch*, 673 F.3d at 429 (after *Dukes*, "certifying declaratory relief under Rule 23(b)(2) is permissible even when the declaratory relief serves as a predicate for later monetary relief[.]".

The monetary relief sought here is incidental to the requested declaratory and injunctive relief because if the Court declares that Defendants are "video service providers" who are obligated to pay a franchise fee, Defendants' monetary liability will be automatic and determined by objective criteria based on a statutory formula. *See* O.R.C. § 1332.32. Claims for monetary relief are "incidental" when they seek "damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief . . . such incidental damages should not require additional hearing to resolve the disparate merits of each individual's case; it should neither introduce new substantive legal or factual issues, nor entail complex individualized determinations." *Carter*, 2018 WL 1613787, at *5–6 (quoting *Allison v. Citgo Petroleum Corp.*,

151 F.3d 402, 415 (5th Cir. 1998));*Meier*, 2020 WL 1227761, *9 ("Incidental damages should be only those to which class members automatically would be entitled one liability to the class (or subclass) as a whole is established.") (quoting *Allison*, 151 F.3d at 415); *see also Amara*, 775 F.3d at 523 (holding certification under 23(b)(2) is appropriate where "monetary benefits flow as a necessary consequence of [the] injunction."). In other words, the monetary relief Maple Heights seeks is "concomitant with" the declaratory relief sought. *See Allison*, 151 F.3d at 415 ("[T]he recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief.").

If this Court declares that Defendants are "video service providers" and must pay O.R.C. § 1332.32's video service provider fee, the Court will not need to make any individualized factual or legal determinations to determine what monetary relief each Class member should receive: Defendants' monetary liability—both prospectively and retroactively—will be based on a statutory formula. *See* O.R.C. § 1332.32(a) ("The fee shall be calculated . . . by determining the provider's gross revenue . . . and multiplying the result by the percentage specified in . . . this section."). Thus, in the event the Court orders declaratory relief in the Class' favor, there would be no need for "additional hearings to resolve the disparate merits of each individual's [damages] case." *Allison*, 151 F.3d at 415. This is not a case where the Class' entitlement to monetary relief depends on "complex individualized determinations for which litigation specific to each individual [class member] could make a difference." *See Amara*, 775 F.3d at 523. Because determining Defendants' monetary liability will be "mechanical, formulaic, a task not for a trier of fact but for a computer program," certification under Rule 23(b)(2) is appropriate. *See Johnson*, 702 F.3d at 372 ("Should it appear that the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program . . . the district court can award that relief without

terminating the class action and leaving the class members to their own devices and also without converting this (b)(2) class action to a (b)(3) class action."); *accord Allison*, 151 F.3d at 415 ("[S]uch damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.").

**D. The Proposed Class Also Satisfies Rule 23(b)(3).**

In the alternative, this Court should certify Plaintiff's claims for monetary relief because the proposed class also satisfies Rule 23(b)(3)'s requirements. *See Clemons v. Norton Healthcare Inc.*, 890 F.3d 254, 279-80 (6th Cir. 2012) (endorsing bifurcated certification approach under Rules 23(b)(2) and (b)(3)). Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In reviewing this issue, courts consider: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. *Id.*

**1. Common Issues Predominate.**

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Plaintiff need not prove that each element of its claim is susceptible to class-wide proof, but only that common questions "predominate over any questions affecting only individual [class] members."

17

*Amgen*, 568 U.S. at 469. If one or more "common, aggregation-enabling, issues in a case are more prevalent or important than the non-common, aggregation-defeating, individual issues," the proposed Class satisfies this prong of Rule 23(b). *Id.* This remains true even if every proposed Class member's damages are not exactly the same. *In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, 722 F.3d at 861 ("Because [r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well night universal . . . in the mine run of cases, it remains the black letter rule that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members."). So long as "common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied." *Id.* (quoting 5 Moore's Federal Practice § 2346[2][a] (1997)).

This Court routinely certifies classes where, as here, litigation centers on a single course of conduct by the defendant that is determinative of liability and is common to all class members. *See, e.g.*, *In re Sonic Corp. Customer Data Breach Litig.*, No. 17-md-2807, 2020 WL 6701992, at *6 (granting certification where liability could be determined on a class-wide basis even if some individualized damage questions were present); *Humphrey v. Stored Value Cards*, No. 1:18-CV-1050, 2018 WL 6011052, at *6-7 (N.D. Ohio Nov. 16, 2018) (Gwin, J.) (granting certification where plaintiff's main allegations applied to all class members and essential legal questions arising from allegations affected all class members in the same fashion); *Steigerwald*, 326 F.R.D. at 479-80 (granting certification where, like here, the answer to the central question will apply equally to all class members); *Chapman*, 2017 WL 1433259, at *8 (granting certification of statewide classes where liability determination would involve same legal questions for all class members and damages model aligned with liability theory); *Siding and Insulation Co. v. Beachwood Hair Clinic,*

*Inc.*, 279 F.R.D. 442, 444-46 (N.D. Ohio 2012) (Gwin, J.) (certifying class because claims of all class members arose out of standard practice). Class certification is thus appropriate here, because the determination of Defendants' liability will be based upon facts and circumstances common to the proposed Class.[5]

Moreover, although the amount of damages may differ slightly among Class members—based upon the amount of Defendants' gross revenues derived from subscribers with service addresses in each municipality and the percent that each municipality charges for a video service provider fee—damages are easily identifiable and capable of calculation using a single, common formula as set forth above. *See Steigerwald*, 326 F.R.D. at 479-80 ("Although each class member may be entitled to a different amount of monetary relief, [defendant] would calculate each class member's monetary relief by applying a consistent formula. . . ."); *In re Scrap Metal Antitrust Litig.*, 2004 WL 7340436, at *11 (certification is appropriate where calculating damages is a "mechanical task" that is "capable of mathematical or formula calculation" and is entirely manageable). Damages in this case can be determined by multiplying Defendants' gross revenues (as defined specifically by the Act) derived from subscribers with service addresses in the geographic areas of the proposed Class members by the percentage each proposed Class member charges as a video service provider fee (up to 5%, as set by municipal ordinance). Under this approach, damages are "susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *See Comcast v. Behrend*, 569 U.S. 27, 35 (2013). Rule 23(b)(3)'s predominance requirement is satisfied in this case.

---

[5] *See* Simon Report at ¶¶ 7, 35-77 (Defendants transmit the exact same video programming, which is comparable to that of broadcast television, to every municipality, township, and county in the State of Ohio); *see also* Malfara Report at ¶¶ 14-46  (Defendants' video programming is transmitted in the same manner (over wires or cables located in part in public rights-of-way) to subscribers located in all municipalities, townships, and counties in the State of Ohio).

**2.  A Class Action is the Superior Procedure for Managing this Case.**

Plaintiff and each of the other Class members have experienced identical circumstances as a result of Defendants' failure to comply with the Act. At its core, this is a case of common factual questions, the answers to which will be driven by discovery. Relitigating these issues repeatedly contravenes the purpose of the Federal Rules because it will not "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated . . ." *Martin v. Behr Dayton Thermal Products LLC*, 896 F.3d 405, 415 (6th Cir. 2018). Further, a class action will not "sacrific[e] procedural fairness or bring[] about other undesirable results." *Id.* (quoting *Amchem*, 521 U.S. at 615).

This case involves 2,246 proposed Class members. Without a representative, aggregate action, thousands of municipalities and townships across the State of Ohio will be required to institute their own separate actions to enforce the Act. Leaving every municipality to litigate on its own would contravene the interests of speedy and fair adjudication of the common questions presented here. *See, e.g.*, Fed. R. Civ. P. 1. A class action would allow this Court to resolve all the common questions of law and fact in one action and, therefore, would avoid redundancy and the risk of inconsistent results. It is also the most efficient, practical, and fair method of adjudication. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1440 (2010) (Rule 23 is "designed to further procedural fairness and efficiency.").  Accordingly, a class action is the superior procedure for managing this case. Rule 23(b)(3)'s superiority requirement is satisfied.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff City of Maple Heights, Ohio respectfully requests that this Court grant its Motion for Class Certification and Appointment of Class Representative and Class Counsel.

Dated:  April 19, 2020

Respectfully submitted,

*/s/ Justin J. Hawal*
Mark A. DiCello (0063924)
Justin J. Hawal (0092294)
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio  44060
Tel:  440-953-8888
madicello@dicellolevitt.com
jhawal@dicellolevitt.com

Adam J. Levitt
Mark S. Hamill (*pro hac vice*)
Brittany Hartwig (*pro hac vice*)
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Tel:  312-314-7900
alevitt@dicellolevitt.com
mhamill@dicellolevitt.com
bhartwig@dicellolevitt.com

Austin Tighe*
Michael Angelovich*
**NIX PATTERSON, LLP**
3600 North Capital of Texas Highway
Building B, Suite 350
Austin, Texas  78746
Tel: 512-328-5333
atighe@nixlaw.com
mangelovich@nixlaw.com

C. Cary Patterson*
**NIX PATTERSON, LLP**
2900 St. Michael Drive, 5th Floor
Texarkana, Texas  75503
Tel:  903-223-3999
ccp@nixlaw.com

Peter Schneider*
**SCHNEIDER WALLACE COTTRELL
KONECKY, LLP**
3700 Buffalo Speedway, Ste. 1100
Houston, Texas  77098
Tel: 713-338-2560

21

pschneider@schneiderwallace.com

Todd M. Schneider*
Jason H. Kim*
**SCHNEIDER WALLACE COTTRELL
KONECKY, LLP**
2000 Powell Street, Suite 1400
Emeryville, California  94608
Tel:  415-421-7100
tschneider@schneiderwallace.com
jkim@schneiderwallace.com

***Counsel for Plaintiff and the Proposed
Class***

\* *Pro Hac Vice* applications to be filed

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing was filed electronically using the Court's CM/ECF service, which will send notification of such filing to all counsel of record on this 19th day of April, 2021.

*/s/ Justin J. Hawal*
Justin J. Hawal (0092294)